No. 73.—MARY JACKSON, and others, plaintiffs in error, *vs.* SAMPSON R. CULPEPPER, defendant in error.

[1.] Where a paper writing in the form of a deed of gift, purporting to convey certain slaves to a trustee, in trust for the daughter-in-law of the donor and her increase, with a covenant of warranty as to the title,  the donor reserving to himself a "lifetime control and interest" in the slaves, was offered in evidence, *held*, that the paper writing was a deed, and not testamentary in its character.

[2.] To constitute an instrument in the form of a deed of gift a testamentary paper, it is requisite that its effect should be made to depend upon the event of the death of the donor, as necessary to consummate it.

Trover.   From Warren Superior Court.   Tried before Judge SAYRE.   October Term, 1847.

Upon the trial below, the counsel for the plaintiffs offered in evidence, as their title to the slaves the subject of the suit, the following instrument:

"GEORGIA,          Know all men by these presents, that I, John *Warren County.*  W. Jackson, of said county and State, for and in consideration of the natural love and affection that I have and bear to my beloved daughter-in-law, Mary Jackson, and her natural increase now begotten and hereafter to be born of Lewis Jackson and Mary Jackson his wife, do hereby give, grant, and convey unto Lewis Jackson, in trust for my said daughter-in-law, Mary Jackson, and her said increase, for their sole use and benefit, one negro woman Edy, and her two children Melmon and Dulcy, and all the future increase of said negroes: To have and to hold said negroes and their increase, to the said Lewis Jackson, trus-

tee, for the sole use and benefit of the said Mary and her increase, not subject to the debts or contracts of the said Lewis, trustee as aforesaid. And I, the said John W. Jackson, for and in consideration of the natural love and affection that I have and had to my said daughter-in-law, Mary, and her increase as aforesaid, do hereby warrant and defend the title and claim of said negroes, Edy and Melmon and Dulcy, against the claim of myself and the claim of all other persons whatever; hereby reserving to myself a life-time control and interest in said negroes.

"In testimony whereof, I have hereunto set my hand and affixed my seal, this the 18th day of December, 1844.

*his*

John ⋈ W. Jackson.    [L. s.]

*mark.*

*Test,*

William Gibson,

James G. Swain."

John W. Jackson, the donor, having departed this life, the instrument was objected to, on the ground that it was testamentary in its character, and not a deed of conveyance, and that the same had not been proved as a will.

The objection was sustained by the Court below, the Court holding, that said instrument was not a deed of conveyance, but was testamentary in its character. Whereupon the plaintiffs submitted to a nonsuit, with leave to move to set the non suit aside and reinstate the case.

Accordingly the motion was made on the following ground :

1. Because the Court erred in rejecting the testimony; that the said instrument was a deed of conveyance, and not testamentary in its character.

The Court below overruled the motion, and the counsel for the plaintiffs excepted, on the following ground :

1. *Because* the said instrument was a deed of conveyance, passing title out of John W. Jackson at the time of its execution and delivery.

2. *Because* said paper was not testamentary in its character, and no probate of it as a will was necessary to make it evidence. It only needed proof as a deed of conveyance.

Gibson, Thomas & Johnston, and Cone, for the plaintiffs in error.

LINTON STEPHENS, for the defendant in error.

Messrs. THOMAS & JOHNSTON contended :

That the instrument took effect *eo instanti* upon its execution, with a postponement of possession on the part of the donees.

It is a deed : *first,* because it uses words of conveyance in *presenti; second,* it purports to be for a consideration; *third,* it warrants the title ; *fourth,* it is sealed and delivered ; *fifth,* it is witnessed before a magistrate; *sixth,* it conveys absolutely to a trustee for certain purposes—1stly, to the use of the grantor during life, and 2dly, to the use of the plaintiffs in remainder.

It is believed that no English authority can be found, previous to 1776, wherein a paper purporting to be a deed is held to be a will, except either where the words are used, " I give, &c., *at my death,*" or where the courts expressly ruled it a will to give the instrument *some* effect, or where words are used plainly *implying* that the donor did not intend to part with the title till after death.

In *Thorold* vs. *Thorold,* 1 *Phill. Ecl. R.* 1, these words are used, " *do hereby give after my death.*" In this case, stress was laid on the fact, that it could not operate as a *deed* because " *it was not on a stamp.*"

In *Shergold* vs. *Shergold, Prerog.* 1714, property was given by deed, says the judge, " *to take effect after his* (Walter Pope's) *death.*"

In *Markwick* vs. *Taylor, ib.* 1722, Markwick made a deed of gift of all his estates " *after death.*"

In *Green* vs. *Proude,* 1 *Mod. R.* 117, the father did agree to give the son so much, and the son did agree to pay such and such debts and sums of money, and there were some particular expressions resembling the form of a will, as that he was sick of body, and did give all his goods, chattels &c.; and they gave evidence that he intended it for his last will.

In *Rigden* vs. *Vallier,* 2 *Vesey R.* 252, the bequest being to take effect after the payment of funeral expenses, the intention was clearly shown.

In *Corp* vs. *Corp,* the instrument being between husband and wife, was void as a deed. He gave special directions to his executors concerning the paper ; it was *held* to be a *will.* No principle of

law would have recognised it as a *deed.* Many authorities were produced to show, as it had to be declared testamentary or void, that it should be declared testamentary.

In *Hester, Ex'r.* vs. *Young*, decided in this Court, 2 *Kelly R.* 31, the deed was " I do give &c. *after my death.*"

We maintain that it must appear from the instrument, or clear evidence *dehors*, that it was the intention of the writer that *death* was the event to give effect to it, otherwise it is no will.    1 *Wills. on Executors*, 60; *Thompson et al.* vs. *McDonald et al. Dev. & Bat. Eq. R.* 473; *Thompson* vs. *Brown*, 8 *Eng. Com. L. R.* 262.

Mr. STEPHENS, for the defendant in error, made the following points :

1. A gift cannot take effect *in futuro*, but must take effect immediately, or not at all.    Either *actual possession* or the *right* to possession, must pass out of the donor at the time of the gift, or it can never pass afterwards.    2 *Black. Com.* 441; 2 *Kent. Com.* 438.

2. A remainder either in realty or personalty, must be supported by a particular estate created at the same instant, and cannot be founded on a reservation to the grantor.    2 *Black. Com.* 165 *to* 169.

3. All deeds of gift of personal property reserving a trust for the benefit of the donor, are void.    *Stat.* 3 *Henry*, VII *Ch.* 4; 2 *Black. Com.* 441 *and note.*

4. Whatever paper purporting to convey or transfer property, the maker intends to take effect at his death, and not until then, is testamentary in its character.    2 *Kelly R.* 31, *and authorities there cited; Jarm. on Wills*, 11 *et. seq.*

Mr. CONE, in conclusion, contended,

1. That in order to make a paper testamentary, no power, right, interest or estate must pass from the donor to the donee, during the lifetime of the donor.

2. That in construing a written instrument, the court will take the whole together, and give effect to every part if possible.

3. That the instrument under consideration, immediately passed the legal estate in the property to the trustee.

4. That the reserving a lifetime control and interest in the property, was nothing more than a declaration of the uses of the property during the life of the donor, and by no means inconsistent with the previous grant of the legal estate to the trustee.

5. That the legal estate having passed to the trustee upon the execution of the instrument, was decisive of its character.   1 *Jarm. on Wills,* 15, 16, 17, 18; *Attorney General* vs. *Jones, 5 Price R.* 460; *Thompson* vs. *Brown,* 3 *Myl. & Keene R.* 32.

*By the Court.*—WARNER, J., delivering the opinion.

The only question presented by the record in this case for our consideration and judgment is, whether the paper writing offered in evidence by the plaintiff in the Court below, is a deed or a will.

The Court below ruled that the paper writing was not a [1.] deed of conveyance, but testamentary in its character, and rejected the evidence; to which decision of the Court below, the plaintiff excepted, and now assigns the same for error in this Court.

What is a will?   A will is defined to be the legal declaration of a man's intentions, which he wills to be performed *after his death.* 2 *Black. Com.* 499.

Was it the intention of the donor John W. Jackson, manifested by the instrument itself, that it should not take effect until *after his death?*   We think not, for the reason, that a *present interest* in the negroes was conveyed by the donor and vested in the trustee for the uses and objects declared by the instrument.

The donor conveys to the trustee Lewis Jackson, three negroes, *in trust,* for and in consideration of the natural love and affection which he had for his daughter-in-law Mary Jackson, and her natural increase then begotten and which thereafter might be born. The conveyance of the property to Lewis Jackson in trust, is as unqualified and absolute as words can make it; and the donor John W. Jackson, covenants to warrant and defend the title to the negroes so conveyed by him, against the claim of himself and the claim of all other persons.   The donor then declares the uses and the objects for which the property has been conveyed to the trustee.

The trustee is to have and to hold the negroes and their increase, for the *sole use* and benefit of Mary Jackson and her increase, and not to be subject to his debts or contracts, the donor reserving to himself a lifetime control and interest in the negroes.   The fee simple title to the negroes vested in the trustee at the time of the execution of the deed by the donor, for the sole use and benefit of Mary Jackson and her increase, to be enjoyed by them after the termination of the life estate of the donor.   The donor would have been estopped in his lifetime, by his covenant contained in the

deed, from asserting in himself *the fee simple title* to the property conveyed to the trustee. The instrument of writing mentioned in the record, was, in our judgment, *operative* and binding on the donor in his lifetime, to pass the *fee simple title* to the property from himself to the trustee, and vested the same in him for the uses and purposes of the trust as declared by the instrument. The *fee simple title* to the property *irrevocably* passed out of the donor, which totally forbids the idea of its being a will, for a will is *ambulatory* until the death of the testator. This case is supposed by the Court below to come within the principle of the decision in *Hester* vs. *Young*, 2 *Kelly R.* 41. In that case, the donor William Womack, gave the property to his son, *after his death*, and the instrument was wholly *inoperative* until the death of the donor.

In this case, the donor in his *lifetime* absolutely conveys the title to the property, with a covenant of warranty, to the trustee, declaring the uses and objects of the trusts, one of which is, that the donor shall have the use and control of the property during his life, the fee simple title to the negroes being vested in the trustee, for the sole use of Mary Jackson and her increase. In *Hester* vs. *Young*, nothing passed from the donor to the donee in the *lifetime* of the donor, but the title in the donee was to take effect *after the death* of the donor. The two cases are in our judgment clearly distinguishable. In the one, a *present* interest in the property is conveyed by the donor to the trustee for certain declared and specified objects; the vesting of the paramount title to the negroes in the trustee, does not depend on the *death* of the donor for its consummation; the property is not given to the trustee *after the death of the donor*. In *Hester* vs. *Young*, the instrument was entirely *inoperative* during the life of the donor, it was ambulatory and revocable by him, whereas the donor in this case would have been estopped in his lifetime from asserting the paramount title to the property in himself; the only interest which he had in the property was reserved and declared in the trust deed to Jackson the trustee. The fee simple title to the negroes vested in the trustee, as we have already stated, subject to be enjoyed by Mary Jackson and her increase, upon the termination of the life estate of the donor. The absolute title of the trustee to the property, was not in any way effected by the *death* of the donor, for the reason that its validity by the terms of the instrument, was not made to depend on *that event.*

[2.] To constitute this instrument a testamentary paper, *its effect*

must be made to depend upon the *event of the death of the donor as necessary to consummate it,* which in our judgment it does not. In *Glynn* vs. *Oglander,* 4 *Eng. Eccl. R.* 181, Sir John Nicholl says: "Courts of probate have gone considerable lengths to give effect to instruments as testamentary, notwithstanding their form, where the intention that they should take effect *upon death has been manifest.* But I do not recollect a case (and the learned counsel in support of the allegation admits that he is not able to point out one,) where a paper *not made to depend on that event as necessary to give it consummation,* has been admitted to probate." The instrument offered in evidence by the plaintiff in the Court below, not being testamentary in its character, for the reasons already stated, we are therefore of the opinion that the Court erred in its judgment in so ruling, and in nonsuiting the plaintiff. Let the judgment of the Court below be reversed, and the cause reinstated.

Judgment reversed.