# Supreme Court of the State of Georgia,

## AT ATHENS,

## MAY TERM, 1861.

PRESENT—JOSEPH H. LUMPKIN, ⎫
RICHARD F. LYON, ⎬ JUDGES.
CHARLES J. JENKINS, ⎭

| 32 | 589 |
| 90 | 653 |
| 32 | 589 |
| f112 | 214 |
| 32 | 589 |
| 127 | 763 |

---

JAMES W. DANIEL and T. M. DANIEL, administrators, etc., plaintiffs in error, *vs.* SARAH H. VEAL, defendant in error.

1. Whether a paper be a will or a deed, depends upon its effect and operation, to be determined by its own terms.

2. If, from the terms of the instrument, it appear that the donor intended that the title to the property specified should remain in him, until his death, and then pass to the donee, it is a testamentary paper, whatever be its form. If on the contrary, the terms of the instrument clearly indicate an intention that the title shall pass *eo instanti* that it is executed, it is a deed, notwithstanding the enjoyment be postponed: *Provided*, the essential requisites of a deed be not lacking.

3. When clauses, in deeds and other instruments *inter vivos*, are repugnant and incompatible, the earlier prevails, unless the inconsistency be so great as to avoid the instrument for uncertainty.

4. D., by a deed of gift conveyed to V. and her son, the absolute title to a negro girl slave, reserving to himself the right of revoking the deed of gift: *Held*, that the reservation was void, and that D. could not revoke the gift.

Daniel and Daniel, adm'rs, *vs.* Veal.

Claim, in Madison Superior Court. Tried before Judge Thomas W. Thomas, at the March Term, 1861.

The questions presented for adjudication by the record in this case, grow out of the state of facts following, to-wit:

Some time prior to the year 1854, James Daniel was in possession of a negro girl by the name of Jin, which negro girl, then very young, afterwards went into the possession of Sarah H. Veal.

On the 26th of December, 1854, James Daniel executed and delivered to Sarah H. Veal a paper in writing, of which the following is a copy:

"STATE OF GEORGIA—Madison County.

"I, James Daniel, of said State and county, do, for divers good reasons, hereby give and convey unto Sarah H. Veal and her son, James W. Veal, a certain negro girl called Jin, about eight years old, now in her possession. And should I die without making other provisions for them, my wish is, that the said girl, together with her future increase, remain with her, the said Sarah H. Veal, until the said James W. arrives at twenty-one years of age, when the said girl and her increase shall be equally divided between her and him. If the said Harriet should die previous, then the son to have all, hereby reserving to myself the right of revoking this deed of gift. 26th December, 1854.

"JAMES DANIEL."

In October, 1858, the negro girl, by some means or other, went into the possession of a son-in-law of James Daniel, and was held by said son-in-law under a loan from said Daniel.

In March, 1859, James Daniel died intestate, and James W. Daniel and T. M. Daniel obtained letters of administration on his estate, and had the negro girl appraised with the other property of the estate of deceased.

Afterward, the negro girl was advertised for sale as the property of James Daniel, deceased, and Sarah H. Veal

Daniel and Daniel, adm'rs, *vs.* Veal.

interposed a claim therefor, which claim was returned to the Superior Court of Madison county for trial. On the trial, the claimant offered in evidence the foregoing deed, to which counsel for the administrators objected. 1st. Because the instrument was not a deed, but was testamentary in its character, and was inadmissible without proof of its probate before the Ordinary. 2d. Because it was not attested or recorded, though the genuineness of intestate's signature was admitted. 3d. Because it was not good as a deed, for that it conveyed no title to the negro, but was only evidence of a loan, revocable at pleasure.

The Court overruled the objection and admitted the paper in evidence, and counsel for the administrators excepted.

The administrators proposed to prove that the negro was taken out of claimant's possession by their intestate, in the year 1858, but the Court rejected the testimony as evidence of revocation, and the administrators excepted.

The jury returned a verdict for the claimant, and the administrators ask a reversal of the judgment, because of alleged error in the aforesaid rulings of the presiding Judge.

HESTER & AKERMAN, for plaintiffs in error.

W. G. DELONEY, *contra.*

*By the Court.*—JENKINS, J., delivering the opinion.

The first question presented for our consideration in this case, by counsel for plaintiffs in error, is, that the instrument of writing relied upon by the claimant, is a testamentary paper and not a deed, and therefore not admissible in evidence as a muniment of title until admitted to probate as a will in the Court of Ordinary.

It is very true that the character of an instrument does not at all depend upon its form, nor does the fact that the maker called it a deed, or that he believed it to be a deed, or that he delivered it, and caused it to be recorded as a deed, make it so. Whether it be a will or a deed depends upon its effect and operation, to be determined by its own terms.

1. If from them it appear that the donor intended that the title to the property specified should remain in him until his death, and then pass to the donee, it is a testamentary paper, whatever be its form. 2 Vesey, Jr., 230–2. Speers (S. C. R.) 230. 2 Ga. Reports, 31. 8 Ibid, 450. 10 Ibid, 506. 20 Ibid, 707.

If, on the contrary, the terms clearly indicate an intention that the title shall pass *eo instanti* that it is executed, it is a deed, notwithstanding the enjoyment be postponed : *Provided* the essential requisites of a deed be not lacking.

Furthermore, if the instrument be a conveyance of personal property, the title to which may pass without the solemnities of a deed, the lack of seal is immaterial, but in such case the same rule distinguishing between a will and a gift in *presenti* applies.

The language of the instrument now under consideration is, " I hereby give and convey." The present tense is used, and there is nothing whatever in the context which imports an intention that the title shall remain in the donor one instant after the execution of the instrument. There were two donees, and all that intervenes between the first and the last clause was manifestly intended to determine what interest each donee should take under future contingencies. None of these provisions (preceding the last clause, which will be separately considered) contemplate any continuing or resulting interest in the donor.

2. The paper having been signed, was delivered, as we must suppose, from the fact that it comes from the possession of the donees, and of the fact of delivery there is no contest. The paper recites the fact that the slave in question was in possession of one of the donees at the time of the execution, which is equivalent to a formal delivery of the slave, and this strengthens the presumption that the intention was to pass the title *in presenti*. There is, therefore, nothing whatever in the transaction which imparts to the act of the donor a testamentary character.

But it is said that if the paper be not a will it is certainly no deed.

The chief reliance in support of this position is, that it has no seal, but the use intended to be made of this lack is to show that it was susceptible of being revoked without the solemnity of an instrument under seal, and was in fact subsequently revoked.

We did not understand the counsel to insist that as a gift of personalty it was invalid *for lack of a seal.* He does insist, however, that it conveys no gift, and can only be considered as a loan, if of any validity. We find in this instrument no words importing *a loan* at the will of the maker, nor any limiting the use and enjoyment of the property to a specified time. There are as already remarked, words amply sufficient to pass the property by gift, as "I give," "I convey."

3. The last clause of the instrument is in these words: "*hereby reserving to myself the right of revoking this deed of gift.*"

On the trial in the Court below, the plaintiff in error offered to prove certain subsequent acts of the donor, amounting, as he contends, to a revocation. That evidence having been objected to, was rejected by the Court, and to that ruling he excepts.

Counsel for the defendant in error insists that the evidence was properly rejected: 1. Because the reservation of the power to revoke was void. 2. Because the acts sought to be proven did not amount to a revocation. If the first position be tenable, it will render the consideration of the second unnecessary. It will be observed that by this clause the donor treats the instrument not as a memorandum of a loan, nor yet as a will, but as "*deed of gift,*" and we have already indicated, that in effect, we think, he correctly characterized it; that it as effectually passed the title to the slave as a technical deed of gift would have done. It is an admission of a *perfect gift,* and an attempted reservation of the power to revoke. Without the reservation, it will be conceded, there would have been no power to revoke. But is this power to revoke consistent with the operative portion of the instrument? He obviously meant to convey the title to the

donees; he admits that he had done so, but he reserves the right to revoke the instrument, to annul the act. In the absence of any reservation, it is conceded (by him) that the title of the donees is perfect.

A perfect title implies absolute dominion in the owner over the subject. But if after the execution of the instrument, and the delivery of it, and of the property, he had the power of revocation, his was the controlling will—his the dominion.

The general rules governing the construction of deeds are applicable to this instrument. Our opinion is, that this clause reserving the right of revocation, is inconsistent with the operative portion of the instrument; incompatible with the estate conveyed, and therefore void. "When clauses are repugnant and incompatible, the earlier prevails, in deeds and other instruments, *inter vivos*, if the inconsistency be not so great as to avoid the instrument for uncertainty." 2 Parsons on Contracts, 26. "In a deed, if there be two claims, so totally repugnant that they can not stand together, the first shall be received and the last rejected." Sheppard's Touchstone, 88.

"If the *habendum* be repugnant to the premises, it shall be void, as if a grant be of all his term *habendum* after his death, the *habendum* will be void." 4 Comyn's Digest, 392; Title Grant, E., 10, and note M. "And the grantee will take the estate given in the premises; a consequence of the rule, that deeds shall be taken most strongly against the grantor, and therefore that he will not be allowed to contradict or retract, by a subsequent part of the deed, the gift made in the premises." Now, in the deed or instrument under consideration, excluding the reservation of the right of revocation, there is clearly an absolute gift; but the last clause expresses the reservation of a power to "retract by a subsequent instrument, the gift made in the premises."

In the light of this authority then, (which seems so consonant with right reason,) we can not hesitate to declare the reservation void. It can be scarcely necessary to add, that we decide this case upon common law principles, regarding

it entirely *dehors* the statute of uses, and the construction given to that statute in equity. We concur entirely in the rulings of the Court below.

Let the judgment be affirmed.