WILLIAMS *et al.*, executors, *vs.* TOLBERT *et al.*

1. A paper appearing in other respects to be a deed of gift, with warranty of title, was not rendered testamentary in its character by the following provision contained therein: " It is hereby expressly stipulated and agreed between the parties to this deed of gift, that the said Elijah (the maker of the instrument) reserves to himself a life estate in the tract of land herein and hereby conveyed, to have, use, occupy and enjoy the same during his natural life, and to take and enjoy the rents, issues and profits of the same during his life only."

(a) The facts surrounding the making of the several papers propounded as testamentary in this case, do not indicate that the maker intended them as such.

(b) That, at the suggestion of a lawyer, who heard that the maker of such instruments was to reserve the use of the land for life, they were attested by three witnesses, does not render them testamentary under the facts of this case.

2. Where several papers were propounded as testamentary in character, only one of which was admitted to probate, and the propounders (who were named as executors) appealed as to the other papers, upon a finding against them in the superior court, costs were properly awarded against them as individuals.

Deeds.   Wills.   Before Judge POTTLE.   Madison Superior Court.   March Term, 1880.

To the report contained in the decision it is only necessary to add the following: Ten papers were propounded by Williams *et al.* for probate as wills. One of them was a will in the usual form; the other nine were of the form set out in the decision. The one was admitted to probate, and in it Williams *et al.* were named as executors; probate of the other nine was refused. From this refusal the propounders, as executors, appealed. On the appeal the case was submitted to the judge without a jury. He adjudged the papers not to be testamentary, and awarded costs against the propounders individually. They excepted.

JOHN STRICKLAND ; S. P. THURMOND ; POPE BARROW, for plaintiffs in error.

J. B. ESTES & SON, for defendants.

CRAWFORD, Justice.

Elijah Williams, in February, 1872, made and executed his last will and testament, in due form of law, disposing of all his property.

On the 14th February, 1879, he executed eleven papers by which he disposed of his real estate in that many parcels to his children. The regular will and nine of these papers were offered for probate. The will was admitted to record, but the papers were rejected by the ordinary, upon the ground that they were not testamentary. An appeal was taken to the superior court, where upon the trial, they were considered and adjudged not to be wills nor testamentary in their character, and it is to this judgment that the propounders assign error. The papers offered were in the form of deeds, attested by a justice of the peace and two other witnesses.

1. The line of separation between what constitutes a deed and a will is sometimes so shadowy as to make it extremely doubtful whether it is the one or the other. The law of this state prescribes a rule by which the courts are to be governed, but even that is neither infallible nor satisfactory. It declares that in all cases, to determine the character of an instrument, whether it is testamentary or not, the test is the intention of the maker, from the whole instrument, read in the light of surrounding circumstances. If the intention be to convey a *present* estate, though the possession be postponed until after his death, the instrument is a deed ; if an interest *accruing* and having an effect after his death, it is a will.

Applying, then, as well as we may, this test to the papers in hand, we find that in 1872 a will was made by

the deceased, disposing of all his property, both real and personal, directing that his lands be sold by his executors and the proceeds divided equally between his children. But in January, 1879, he had his lands all surveyed, divided into as many parts as he had children, had plats thereof regularly made, with the exact metes and bounds of each, and about the time of the completion, to-wit, on the 14th of February, 1879, he made and executed to his said children conveyances in severalty to the said lands.

The language employed was: " This indenture, made this the 14th day of February, 1879, between Elijah Williams of the one part, and Elizabeth Cheatham of the other, witnesseth, that the said Elijah, for and in consideration of the natural love and affection which he bears to his daughter, Elizabeth, has given, granted and conveyed (on the terms and limitations hereinafter expressed) and does by these presents give, grant and convey unto the said Elizabeth for life, with remainder to her children, all that tract of land situate, etc.   *   *   *   *   A plat of the same is hereto annexed for a fuller description of the same, and it is hereby expressly stipulated and agreed between the parties to this deed of gift, that the said Elijah reserves to himself a life estate in the tract of land herein and hereby conveyed, to have, use, occupy and enjoy the same during his natural life, and to take and enjoy the rents, issues and profits of the same during his life only." The said paper then closes with the words of a fee simple deed, the usual warranty of title and the attestation of an ordinary deed, except that there were two witnesses besides the justice of the peace.

Does this paper convey a present interest to Elizabeth Cheatham ?

It declares itself an *indenture, made and entered into between the parties;* it *gives, grants and conveys; the grantee is to have and to hold forever in fee simple; the title is warranted;* it purports to be signed, sealed and delivered. What is there, then, to take it out of the ordi-

nary signification and legal effect of these. words? That clause by which he reserves the use and occupation, and the right to take the rents during his life? If this were eliminated, of course there would be no question about it. But is this reservation at all inconsistent with the conveyance of a present estate so far as *title* is concerned, though the *possession* be postponed until after the death of the grantor? We think not. Besides, in the reservation itself is to be found the words: "It is hereby *expressly stipulated and agreed between the parties to this deed of gift* that the said Elijah is to have in the tract of land *herein and hereby conveyed*," etc. The above is not the language of a will, nor that where the conveyance is intended to operate as one.

Indeed, the whole terms of the instrument indicate the intention to pass *the title* to the property at once to the donee, and not to retain it in the donor. He retains the right to use it and take the rents only, but nowhere indicates any reservation of title. And this is the principle ruled in 32 *Ga.*, 589, and reaffirmed upon a paper containing almost the identical words, in 52 *Ga.*, 531. Nor is it at all affected by the ruling in 55 *Ga.*, 369, but is in perfect harmony therewith.

The paper, then, indicating a deed, do the surrounding circumstances change its character? Had the maker desired or intended the paper to be testamentary he would doubtless have added a codicil simply to his acknowledged will, with one paper and a single signature, instead of eleven different papers and as many signatures. In addition to this he had a plat of each child's land attached to his deed and made a part thereof, delivered them all to his two sons, who were present, and they immediately accepted them as deeds, never offering theirs for probate. That a lawyer, who was present, upon hearing the grantor say that he had reserved the use of the land during his life, and that they were to have it only after his death, suggested another witness, thereby mak-

ing three, does not, in our judgment, overcome or change the effect of all the other surrounding circumstances.

2. Upon the assignment of error as to the costs, we think that they properly follow the verdict and judgment.

Judgment affirmed.