## BUNCH v. NICKS.

50  367
e74  115
75   83
75  324

1. DEEDS: *Conveying freehold estate to commence at grantor's death.*
   A valid deed may be made conveying a freehold estate, to commence at the death of the grantor.

2. SAME: SAME.
   An instrument which was executed, delivered, and acknowledged as a deed from a father to his son, after the usual commencement proceeds in the following language: * * * "Hath bargained, sold, and conveyed, and by these presents does grant, bargain, sell, and convey, unto said Q. D. Nicks, junior, and to his children (and the same shall not be sold or alienated until the youngest child shall arrive at the age of twenty-one years, and the deed shall go into full force and effect at my death) the following described lands, to wit;" describing the lands and being in other respects in the common form of a deed with covenant of warranty. *Held*: That such instrument is not a will, but is a valid deed, conveying a present title to the grantee with the right of possession and use postponed, until the grantor's death.

APPEAL from *Arkansas* Circuit Court in Chancery. JOHN A. WILLIAMS, Judge.

*Hemingway & Austin,* for appellants.

Bunch v. Nicks.

1. No livery of seisin being now necessary, one may, by conveyance, grant to another the fee in lands to take effect *in futuro*, reserving in himself the use thereof during life. 6 *Ark.*, 119; 2 *Black. Com.*, 166; 9 *Wend.*, 611; 1 *Ark.*, 83; 35 *Conn.*, 297.

2. Excluding the clause " and this *deed* shall take *full* effect at my death," the instruments are simply *deeds*. The clause merely postponed the *full* enjoyment, and a *present* interest vested in the grantee. An instrument which conveys a present estate to be enjoyed in the future is a deed, but one which defers the vesting of the estate as well as its enjoyment is testamentary. 11 *Johns.*, 337; 1 *Devlin Deeds, sec.* 309; 30 *Miss.*, 91; 9 *Wend.*, 611; 35 *Conn.*, 297; 1 *Id.*, 362; see also 1 *Rich.*, 161; 5 *Rich. L.*, 139; 50 *Me.*, 139; 51 *Id.*, 78; 30 *Miss.*, 91. It was the *intention* of the grantor to *deed* the lands, and courts give such a construction to instruments as will carry the intention of the maker into effect. *Supra*.

3. Evidence may be introduced to show the intention of the grantor. 28 *Ga.*, 98; 1 *Green. Ev., sec.* 277; 1 *Metc.*, 378.

4. These deeds can be construed as covenants by the grantor to stand seized to the use of the grantee. 4 *Mass.*, 135; 22 *Pick.*, 115; 1 *Devlin Deeds, sec.* 24; 3 *Wend.*, 234; 20 *Johns.*, 87; 15 *N. H.*, 381; 11 *Johns.*, 337; 6 *Ired. L.*, 128.

5. *Hershy v. Clark*, 35 *Ark.* has no bearing on this case except to sustain the right to convey lands in fee, reserving a life estate in the grantor.

*Gibson & Holt*, for appellees.

1. No estate can be created to commence *in futuro*; a conveyance must operate immediately or not at all. 2

*Blacks.*, *p.* 165–6. This rule has not been abrogated by the substitution of delivery of the deed for livery of seisin. The fee can never be in abeyance. See 42 *Ala.*, 365; 4 *McCord*, 12. An instrument in the form of a deed, duly signed, sealed, and delivered, if it discloses the intention of the maker that the same is not to operate until his death, is a will. 9 *Rich. Eq.*, 111; 20 *Ga.*, 707; 17 *Ga.*, 267; 13 *Ala.*, 50; 66 *Ga.*, 127; *Ib.*, 317; 65 *Ala.*, 301; 97 *P. St.*, 313.

No *present* interest passed by these instruments, and nothing vested until the death of the grantor, by its terms.

2. Parol evidence was not admissible to show what occurred at or before the time. 29 *Ark.*, 544; 30 *Id.*, 197.

3. No use can result only upon a grant of a fee simple estate—it must be an actual present bargain and sale or covenant to stand seized. 2 *Wash. Real Pr.* 424–5.

These instruments conveyed no estate *at all* until the death of the grantor, and there was no present transfer of the legal title.

4. An instrument which professes to convey nothing *in presenti* cannot stand as a conveyance nor be upheld as a covenant. 35 *Ark.* 17.

BATTLE, J. Quinton D. Nicks, being the father of six children, two sons and four daughters, conveyed his property, consisting of three tracts of land and personal property, by three several deeds, to three of his children, a son and two daughters. The father having died, the daughters and the children of the son who received nothing by the deeds, brought this action to set aside the conveyances and for partition. They allege in their complaint that the father was incompetent to convey his property at the time he undertook to do so, and that the

·deeds were procured by fraud and undue influence. But this is denied by defendants in their answers. Upon the final hearing the court below decreed that the deeds ·should be set aside and the property therein described be divided among the heirs of Nicks; and the defendants appealed.

The deeds were executed on the same day, and, except as to the names of the grantees and description of the property conveyed and so much of one as conveyed the personal property, are of the same tenor and effect. The deed to the son is in the following words:

" This deed of conveyance made and executed at Swan Lake, in the County of Arkansas, and State of Arkansas, on this the 3d day of March, A. D., 1883, by and between Q. D. Nicks, senior, party of the first part, and Q. D. Nicks, junior, party of the second part, witnesseth, that for and in consideration of the sum of one dollar, this day in hand paid by the party of the second part to the party of the first part, the receipt whereof is hereby acknowledged, and in consideration of the love and affection that the first party bears to the second party, he hath bargained, sold, and conveyed, and by these presents does grant, bargain, sell, and convey unto said Q. D. Nicks, junior, and to his children (and the same shall not be sold or alienated until the youngest child shall arrive at the age of twenty-one years, and the deed shall go into full force and effect at my death), the following described lands, to wit: The south half of the north half of the northwest quarter of section twenty, in town· ship six, south of range six west, being a fractional part of forty acres, the boundaries hereafter to be designated by stakes or iron stobs, together with all the improve- ments and appurtenances thereon or in anywise belong- ing thereto.

Bunch v. Nicks.

To have and to hold the within granted lands and premises unto said party of the second part, his heirs and assigns forever; and the party of the first part will, and his heirs and assigns shall, forever warrant and defend the title to the same unto said party of the second part, his heirs and assigns, against all lawful claims whatsoever.

Witness my hand and seal the time and place before written,                    Q. D Nicks.  [Seal.]

To the deed to one of the daughters was added the following sentence:  " And in consideration of the said second party's taking care of her mother and myself during our lifetime and paying all of my funeral expenses, I do bargain and sell unto the said Martha Bunch, and by these presents do bargain, sell, and convey at my death all the personal property that I may be possessed of, to have and to hold forever."  All the deeds were properly acknowledged and recorded.

It is contended that these deeds are void upon their faces.  The objection is, they purport to convey freehold estates to commence at the death of the grantor.  Are they void for the reason stated?

It was a principle of the feudal law of England that " an estate of freehold must be created to commence immediately."  " For," says Blackstone, " it is an ancient rule of the common law, that an estate of freehold cannot be created to commence in future; but it ought to take effect presently, either in possession or remainder; because at common law no freehold in lands could pass without livery of seisin, which must operate either immediately or not at all.  It would, therefore, be contradictory, if an estate, which is not to commence till hereafter, could be granted by a conveyance which imports an immediate possession."

Prior to the reign of Henry VIII, real estate could be conveyed to one person in trust or for the use of another, and equity would enforce the use. In this way the title could be held by one while the use and profits of the land could be enjoyed by another free from feudal responsibilities. The use was a mere right in equity and did not come within the technical rules of the common law which governed the alienation of real estate. While "a fee could not be mounted upon a fee," at common law, "or an estate made to shift from one person to another by matter *ex post facto*; and a freehold could not be made to commence *in futuro*, nor an estate spring up at a future period independently of any other; and a power could not be reserved to limit the estate, or create charges on it in derogation of the original feoffment,"—"a use might be raised after a limitation in fee, or it might be created *in futuro*, without any preceding limitation; or the order of priority might be changed by shifting uses or by powers; or a power of revocation might be reserved to the grantor, or to a stranger, to recall and change the uses." The facility with which they could be created led to their application to a variety of purposes in the business of civil life; and they were often perverted to mischievous ends. Lord Bacon complained that they were "turned to deceive many of their just and reasonable rights." To prevent the abuses and frauds practiced through them the statute of 27 *Henry* 8, *C.* 10, commonly called the statute of uses, was passed, by which it was enacted that the legal estate or seisin shall be in them that have the use, "*in such quality, manner, form, and condition, as they before had in the use,*" and thereby united the use and legal title, and changed the use from an equitable to a legal interest, and gave to the legal interest thereby created the qualities of the use, and declared that the *cestui qui use* held the same in the same manner, form, and condition as he

before held the use; so that while freehold estates to commence *in futuro* could not be conveyed at common law, such conveyances can be made under the statute of uses. 2 *Blackstone, p.* 327 ; 4 *Kent's Com., pp,* 290–298.

The result of the statute of uses was, several new modes of conveying legal estates, wholly unknown to the common law, came into use, among them covenants to stand seized to uses, and bargain and sale. In the first mentioned conveyance a man seized of lands, covenants that he will stand seized to the use of, the covantee for life, in tail, or in fee. " Here," says Blackstone, " the statute executes at once the estate; for the party intended to be benefited, having thus acquired the use, is thereby put at once into corporal possession, without ever seeing it, by a kind of parliamentary magic." In the bargain and sale " the bargainor for some pecuniary consideration bargains and sells, that is, contracts to convey the land to the bargainee, and becomes by such a bargain a trustee for, or seized to the use of, the bargainee ; and then the statute of uses completes the purchase ; or, as it hath been well expressed, the bargain first vests the use, and then the statute vests the possession." By both modes an estate of freehold to commence *in futuro* can be created under the statute of uses. 2 *Blackstone Com.,* p. 338.

In *Roe v. Franmar, Willes,* 682, " A, in consideration of natural love and of £100, by deed of lease and release granted, released and confirmed certain premises, *after his own death,* to his brother B, in tail, remainder to C, the son of another brother of A, in fee; and he covenanted and granted that the premises should, after his death, be held by B, and the heirs of his body, or by C and his heirs according to the true intent of the deed. It was held that the deed could not operate as a release, because it attempted to convey a freehold *in futuro,* but that it was good as a covenant to stand seized."

In *Wyman v. Brown*, 50 *Me.*, 139, H. B., in considera-
tion of $1,000, by deed, containing the following words:
"this deed or conveyance *not to take effect during my life-
time*, and to take effect and be in force from and after my
decease; and the said Hannah is to have quiet possession
and the entire income of the premises until her decease;"
conveyed certain lands to N.    It was held the deed was suf-
ficient, under the statute of uses, to convey an estate of free-
hold to commence at the death of H. B.    Mr. Justice Wal-
ton, speaking for the court in that case, said :    "We enter-
tain no doubt that, by deeds of bargain and sale, deriving
their validity from the statute of uses, freeholds may be
conveyed to commence *in futuro*.    It will be seen that the
law is so held in England, and by an overwhelming weight
of authority in this country.".

And so in *Gullett v. Lamberton*, 6 *Ark.*, 109, in a convey-
ance of a slave to a daughter, the grantor reserved to him-
self the use and possession of the slave during his natural
life or pleasure.    This court, after holding that slaves and
real estate stood upon the same footing as to limitations and
reservations contained in conveyances, held that the convey-
ance was valid and sufficient to vest in the daughter a future
estate in the slave.

There are numerous cases to the same effect as those
already cited.    *Williams v. Tolbert*, 66 *Ga.*, 127; *Doonn v.
Smith*, 52 *Me.*, 141; *Rogers v. The Eagle Fire Co.*, 9 *Wend.*,
611, and cases cited.

**1. DEEDS:**
**Conveying
freehold es-
tate to com-
mence in
*futuro*.**
We think an estate of freehold to commence *in futuro*, can
also be conveyed under our statutes, independently of the
statute of uses.    Under our laws real property stands upon
ground different in many respects from that upon which it
stood at common law.    Anciently it was held of some
superior lord "by and in consideration of certain services to
be rendered to the lord by the tenant."    In most of in-

stances the services to be rendered were military. Out of this fact grew the necessity of livery of seisin in order to create an estate of freehold, and the rule that "there should always be a known owner of every freehold estate, and that the freehold should never, if possible, be in abeyance. This rule," it is said, "was established for two reason : 1. That the superior lord might know on whom to call for the military services due from every freeholder,. as otherwise the defence of the realm would be weakened. 2. That every stranger who claimed a right to any lands might know against whom to bring suit for the recovery of them ; as no real action could be brought against any one but the actual tenant of the freehold." But under the laws of this State lands are held in *allodium*. They may be aliened and possession thereof transferred by deed without livery of seisin. "Any person claiming title to any real estate may, notwithstanding there may be an adverse possession thereof, sell and convey his interest in the same manner and with like effect as if he was in the actual possession thereof." "If any person," says the statute, "shall convey any real estate by deed, purporting to convey the same in fee simple absolute,. or any less estate, and shall not at the time of such conveyance have the legal estate in such lands, but shall afterwards acquire the same, the legal or equitable estate after acquired shall immediately pass to the grantee, and such conveyance shall be as valid as if such legal or equitable estate had been in the grantor at the time of the conveyance." Under the statutes referred to the mere technicalities of the common law were swept away ; and the aid of the statute of uses is not necessary to annex the title to the use.. "But the owner of real estate can convey such part or portion of his estate as he and his grantee may agree, subject only to those restrictions which the law imposes as required by public policy, but relieved from the technical doctrines

which arose out of ancient feudal tenures, and all the restrictive effects which they had upon alienations." *Mansfield's Digest*, secs. 639, 644, 642; *Ferguson v. Mason*, 60 *Wisc.*, 377; *Abbott v. Holway*, 72 *Me.*, 298.

In *Hynson v. Terry*, 1 *Ark.*, 83, and *Gullett v. Lamberton*, 6 *Ark.*, 109, this court held that real and personal property, in this State, stand upon the same footing as to limitations and reservations contained in conveyances, and a sale may be made creating a future estate in personal property, with the right of possession in the vendor for life, or a shorter period, in the same manner and to the same effect as in real estate. Professor Gray, in his work on *The Rule against Perpetuities*, says: "In North Carolina alone is the opposite doctrine held;" and that "outside of North Carolina the case of *Wilson v. Cockrill*, 8 *Mo.*, 1, is the only decision that an executory limitation of a chattel cannot be made by deed." *Gray's Rule against Perpetuities*, secs., 91–95, and cases cited; 1 *Schouler on Personal Property*, (2d *Ed.*) secs., 136, 149.

But it is contended that the deeds in question are testamentary in their nature, and therefore void.

To determine the character of an instrument, as to its being a will or deed, it is necessary to ascertain the intention of the maker from the *whole* instrument, "read in the light of surrounding circumstances." If the intention at the time of the execution of the instrument, was to convey a present estate, though the possession be postponed until after his death, it is a deed; but if the intention was it should not convey any vested right or interest, but should be revocable during his life, it is a will. *Jordan v. Jordan*, 65 *Ala.*, 301; *Williamson v. Tolbert*, 66 *Ga.*, 127.

Are the instruments in question deeds or a will?

In *Shackelford v. Sebree*, 86 *Ill.*, 616, an instrument purporting to be a warranty deed, containing this clause:

" This deed not to take effect until after my decease—not to be recorded until after my decease," was held to be a good and valid deed of conveyance.

In *Wall v. Wall*, 30 *Miss.*, 93, " a voluntary instrument, purporting on its face to be a deed, by which land and slaves were conveyed, by terms in the present tense, but reserving a power of revocation to the maker, to be exer-cised in a certain specific mode, at any time during his life, and also declaring it should not take effect as to the delivery of the property until after the maker's death," was held to vest in the donee an estate *in presenti*, to be enjoyed *in futuro*, and to be a deed, the court holding that the maker evidently intended it should operate as a deed when he re-served the power to revoke it in a specified mode, as the reservation would have been unnecessary if he intended it to operate as a will.

In *Abbott v. Holway*, 72 *Me.*, 298, an instrument purport-ing to be a conveyance of land to the wife of the grantor, with this clause in it :

" This deed is not to take effect and operate as a convey-ance until my decease, and in case I shall survive my said wife, this deed is not to be operative as a conveyance, it be-ing the sole purpose and object of this deed to make a pro-vision for the support of my said wife if she shall survive me, and if she shall survive me, then and in that event only, this deed shall be operative to convey to my said wife said premises in fee simple," was held to be a good and valid deed.

In *Chancellor v. Windham*, 1 *Rich. L.*, 161, a deed whereby a father gave, granted and released to his son a tract of land at the father's death was held to be a good covenant to stand seized to uses ; and it was held that the son became entitled to the land on the death of the father.

In *Alexander v. Burnett*, 5 *Rich. L.*, 189, an instrument

under seal, in the form of a deed, whereby a brother, in consideration of love and affection, and of one dollar to him paid, "*gave, granted, bargained, and sold,*" to his sister a negro, and thereby warranted the title to the negro, with this clause therein: "It is clearly and unequivocally understood that the aforesaid deed of gift is to be of no effect whatever, until I, the aforesaid Benjamin Johnson, depart this life," was held to be valid as a deed, and that it conveyed "a present title to the donee, with postponement of the right of possession until the donor's death.

2. SAME:      We think that the instruments in question were valid
   *Same:*    deeds, and conveyed a present title to the donees, with the postponement of the right of the use and possession until the donor's death.   It is obvious that the intention of the donor was to give his property to the children mentioned in the deeds, reserving the right to use and hold the same and to enjoy the profits thereof during his life.   The evidence of this intention afforded by the instruments themselves are: 1. The form is that of a deed, the words, "grant, bargain, sell, and convey," used, being appropriate to the office of the deed, and inappropriate to a will.   2. They contain a covenant of warranty, whereby the donor agrees to forever warrant and defend the title to the land to the donees and their heirs and assigns against all lawful claims whatsoever. 3. The donor himself calls them deeds of conveyance; and it is unreasonable to suppose he would call what he intended as a will deeds of conveyance.   4.   They were executed, delivered, and acknowledged as deeds.   The only words used in them that can be said to be evidence of an intention to make a will are, "and the *deed* shall go into full force and effect at my death."   But we are to construe these words in connection with the whole deed.   Every part must have effect, if the same can be done consistently with the rules of law.   Construed in this way, it is evident the intention of

Nicks was to give the land, and sell the personal property he had at the time they were executed, to the grantees, and to reserve the use and. enjoyment thereof for and during his. life. If such was not his intention how could the deed take effect at his death? This was the only way they could go into full force and effect, and this, according to the authorities cited and our own opinion, was their intention and effect. To give them any other construction would be to say the donor did not understand the meaning of the words used; and that when he said " *does grant, bargain, sell, and convey*," he meant I give, bequeath and devise ; and when he used the words, " to have and to hold the within granted lands and premises unto the said party of the second part, his heirs and assigns forever, and the party of the first part will, and his heirs and assigns shall, forever warrant and defend the title to the same unto the said party of the second part, his heirs and assigns against all lawful claims whatsoever," he meant nothing.

The evidence introduced on the hearing was not sufficient to show that the donor was incompetent to execute the deeds, or that they were procured through fraud and undue influence. All men are presumed to be sane and competent to transact their business, and fraud is never presumed, The burden of proof was on appellees..

The decree of the court below is therefore. reversed, and the complaint is dismisssed.