MONTGOMERY, next friend, *v.* REEVES, administrator.

No. 6511. JANUARY 15, 1929.

*J. F. Hatchett* and *Claude Christopher,* for plaintiff.

*E. T. Moon* and *Raymond Martin,* for defendant.

HILL, J. S. J. Montgomery as next friend of Frank Rhodes Montgomery, a minor, brought complaint for land against W. P. Brook, administrator of the estate of L. F. Brook, deceased, to recover a certain tract or parcel of land containing fifty acres, more or less, the same being the south half of the west half of lot No. 185 in the 11th district of Meriwether County. It is alleged that W. P. Brook, as administrator, is in possession of the land, receiving the rents and profits therefrom, etc.; that plaintiff claims title to the land from L. F. Brook by warranty deed executed and delivered by Brook to Frank Rhodes Montgomery on November 10, 1925. The defendant filed an answer denying the material allegations of the petition, and averred that the deed was never delivered by L. F. Brook, and that the grantee never went into possession of the property described. Pending the case W. P. Brook died, and Henry Reeves, as administrator, was made a party defendant. On the trial the court granted a nonsuit, and the plaintiff excepted.

The court, in granting the nonsuit, used the following language: "I think this paper is a will, as plain as it can be; it is not to take effect until after the death of the grantor; the deed is in evidence; and my construction of that language in the paper is, that it is testamentary in character. You may take your order, as the court will grant a nonsuit in this case." The paper in evidence was regular in form, was executed as a warranty deed, recited

that the grantor, L. F. Brook, "for and in consideration of the love and affection for his great-nephew and namesake, at or before the sealing and delivery of these presents, receipt of which is hereby acknowledged, has bargained, given, aliened, conveyed and confirmed, and by these presents does grant, bargain, give, alien, convey and confirm unto the said Frank Rhodes Montgomery, his heirs and assigns, all that certain tract or parcel of land . . This deed is made with the condition attached that same is not to take effect until after the death of the maker, he reserving to himself the right to control same and the rents and profits thereof as long as he lives." The deed was attested by two witnesses, one of whom was a notary public and ex officio justice of the peace, who testified that he witnessed the deed with the other witness in the presence of Mr: Brook, the grantor, who signed and took the deed; and that the grantor, at the time of executing the instrument, said: "I have two namesakes, Jesse Brook's boy, and Mr. Montgomery's boy. I have one hundred acres of land, and I want to divide it between the two, and I want you to write the deeds accordingly." "Under his instructions I wrote it, divided the one hundred acres into two sections of fifty acres apiece. He says, 'I want to give it to them; that is practically all the land I have,' and I want to give them this on account of their being my namesakes. Also it will assist Jesse's boy or his mother in educating him. They have not much means, and the income from the place will help to educate him." S. J. Montgomery testified: "When I got to Hogansville he [L. F. Brook] told me what he had done; that he had deeded this one hundred acres of land to these boys, to my boy known as Frank Rhodes Montgomery, and Jesse Frank Brook, the other little nephew, who are both named for him. He said, 'The reason I sent for you to come over here was to tell you that I had deeded this land to these boys, and to turn these deeds over to you as custodian.' . . He told me about making the deeds, and that these boys were minors, and he had to turn the deeds over to somebody, or to some one to hold for these boys until his death, and that he would turn them over to me. When he made this statement he ran his hand into his pocket and pulled out a bunch of keys. From this ring of keys he selected two keys that unlocked his safety-box in the bank. He said: 'You can go over there and get these deeds, if you want to, or at any

time you go after them. I have left them there for you. I don't expect to have anything more to do with them.' . . So the deeds were left where he told me they were. I did not get them. After his death I went to the administrator. When I went back with the administrator, and unlocked the lock-box of Mr. L. F. Brook, I found the deed there, which has been marked 'Exhibit A' in this case. It was in the box, to which he offered me the keys. That was the Georgia State Bank of Hogansville, I believe. . . I am the father of the plaintiff in this case. I am suing as next friend of my son."

The controlling question in this case is, whether the paper tendered in evidence by the plaintiff in the court below, and upon which the grantee seeks to recover in this case, is a deed, or whether it is testamentary in character. The general rule is that in the construction of deeds and other contracts the intention of the parties will control; and if such intention is evident from the language of the contract as a whole, and it contravenes no rule of law, such intention should be given effect. *Keith* v. *Chastain,* 157 *Ga.* 1 (121 S. E. 233). We are of the opinion that the intention of the grantor in the deed under consideration was to pass title in presenti to the grantee, with the right of possession of the property retained in the grantor until his death. In *Shelton* v. *Edenfield,* 148 *Ga.* 128, 130 (96 S. E. 3), it was held: "The criterion for determining whether an instrument is a deed or a will is, whether it is to take effect immediately upon its execution and delivery, or after the death of the maker. Where an instrument was executed in the form of a fee-simple warranty deed, but after the description of the land it was recited that the grantor was 'to have and control the sale of the land during her natural life, thence' to the named grantee, such instrument is a deed vesting title immediately in the grantee, and is not testamentary in character." In the opinion it was said: "The instrument involved in the present controversy was executed in the form of a regular warranty deed in fee simple, with the exception that it contained the following language after the description of the land: ' the said Lucretia S. Edenfield to have and control the sale of the land during her natural life, thence the said Jesse S. Edenfield.' It is argued that this clause not only reserves in Mrs. Edenfield the use of the land, but also the right to sell it during her life-

time, and that therefore the instrument did not pass the title eo instanti it was executed, and that it is testamentary in character, and, having only two witnesses, is void as a will. Whether an instrument is a deed or a will depends on the intention of the maker as to the character of the estate and the time when the instrument is to take effect, to be determined by its own terms. *Spalding* v. *Grigg*, 4 *Ga.* 75; *Jackson* v. *Culpepper*, 3 *Ga.* 569; *Daniel* v. *Veal*, 32 *Ga.* 589; *Robinson* v. *Schly*, 6 *Ga.* 515 (8); 4 Mich. Dig. Ga. R. 262B, and cases there cited. It is also argued that the language, ' to have and control the sale of the land during ' the life of the grantor, is repugnant to the idea of the vesting of the title in the grantee, and that its effect is to reserve in the grantor the right to revoke the instrument before her death. If the terms of the instrument, properly executed as a deed, clearly indicate an intention on the part of the maker to pass the title immediately upon its execution and delivery, it is a deed, although the enjoyment of the property conveyed may be postponed until the death of the grantor. *Daniel* v. *Neal*, 32 *Ga.* 589; *Hamilton* v. *Cargile*, 127 *Ga.* 762 (3) (56 S. E. 1022); *Collier* v. *Carter*, 146 *Ga.* 476 (91 S. E. 551). The real question, therefore, is whether the title is to vest immediately upon the execution and delivery of the instrument, or at the death of the maker. *White* v. *Hopkins*, 80 *Ga.* 154 (1), 159 (4 S. E. 863). The instrument involved in the present case is in form a warranty deed, and attested as such; and there is nothing in the language contained therein to negative the idea that it was intended to take effect immediately upon its execution and delivery, unless the clause following the description of the land, wherein it is recited that the grantor is ' to have and control the sale of the land during her natural life, thence ' to the grantee, is construed to have this effect. This language we construe only as an attempt on the part of the grantor to restrict the sale of the land by the grantee during the life of the grantor, and to reserve the power and control over any sale in herself, and not as intended to prevent the vesting of title in the grantee in accordance with the plain terms elsewhere expressed in the writing. We therefore construe the instrument as being a deed, and not testamentary in character." And see *Price* v. *Gross*, 148 *Ga.* 137 (96 S. E. 4); *Carter* v. *Walden*, 136 *Ga.* 700 (2) (71 S. E. 1047).

It will be observed that the language contained in the clause in

the instant case, "he reserving to himself the right to control same and the rents and profits thereof as long as he lives," indicated the intention of the grantor to reserve only the right to control the land and the rents and profits thereof, and that he did not intend to reserve the title in himself until his death. This construction is borne out by the evidence of the justice of the peace who wrote the deed, and the father of the plaintiff, to the effect that the grantor had given up all the right and title to the property in controversy, by giving the exclusive control over the deed, and the keys which unlocked the safety-box where the deed was placed, into the hands of the plaintiff's father. In *West* v. *Wright,* 115 *Ga.* 277 (41 S. E. 602), it was held: "An instrument attested as a deed and in all respects in the form of a deed should, though it contains the words, 'this deed to take effect at my death,' be treated, not as a will, but as a conveyance passing title in presenti, with right of possession postponed until the death of the maker." In *Brice* v. *Sheffield,* 118 *Ga.* 128 (3) (44 S. E. 843), it was held: "An instrument . . attested as a deed and duly delivered, which recites that it is 'to certify that the grantor has given the grantee certain land' in consideration of his having built her a house, 'said land to belong to him at my death,' is not testamentary in character, but conveys a present title with the possession postponed until the death of the grantor." And see *Watkins* v. *Nugen,* 118 *Ga.* 372 (45 S. E. 262). In *Griffith* v. *Douglas,* 120 *Ga.* 582 (48 S. E. 129), it was held: "An instrument in all respects in the form of a warranty deed, attested as a deed, and delivered to the party named as grantee, although it contains the words, 'that this deed is not to go into effect until after the death of the party of the first part, but at the death of the party of said first part the party of the second part is to take possession,' should be treated, not as a will, but as a conveyance passing title in presenti, with right of possession postponed until the death of the grantor."

The clause in the deed in the case at bar seems to indicate more clearly the intention of the grantor to put the title to the property in controversy in his nephew, Frank Rhodes Montgomery, in presenti, than the clause in the deed in the *Griffith* case, next above cited. See *Isler* v. *Griffin,* 134 *Ga.* 192 (67 S. E. 854); *Collier* v. *Carter,* 146 *Ga.* 476 (91 S. E. 551, 11 A. L. R. 1). In *Wynne* v. *Wynne,* 112 *Ga.* 214 (37 S. E. 378), it was held: "A paper ·in

form a warranty deed and executed as such is not testamentary in character, notwithstanding it contains a clause in the following language: 'to have and to hold the above described premises to the said Bryant P. Wynne of the second part, his heirs and assigns, to be his at my death and the death of my wife, Elizabeth Wynne.'" In delivering the opinion of the court Mr. Justice Cobb said: "It must be conceded that in the earlier cases the tendency of the court was to declare such papers testamentary in character; but from the date of the decision of *Moye* v. *Kittrell* [29 *Ga.* 677], the tendency has been to give the paper that construction which would make it operative; Judge Lumpkin saying in the opinion in that case, that, 'if the words were doubtful, we should incline to that construction which would support the instrument. And this can be done only by holding it to be a deed. For as a will it must fail, wanting the necessary attestation.' In *Dismukes* v. *Parrott* [56 *Ga.* 513] it was held: 'An instrument in form a deed of gift and well attested as such, but not legally attested as a will, so that it would wholly fail of effect if construed to be testamentary in its character, should, if very doubtful in its terms with reference to the time of vesting the estate, be classed as a deed and not as a will.' See also *Owen* v. *Smith,* 91 *Ga.* 564 [18 S. E. 527]. The rule laid down in the 29 *Ga.,* and followed in the other cases cited in immediate connection therewith, has been steadfastly adhered to; and wherever the language of the instrument was such as to make it doubtful whether it was to take effect in presenti and be operative as a deed, or was not to take effect until after the death of the person signing the same and hence testamentary in its character, the doubt has uniformly been resolved in favor of that construction which would make the instrument operative, and if attested as a deed it was held, in such a case, to be the intention of the maker that it should take effect as a deed. The principle was applied in the case of *Goff* v. *Davenport* [96 *Ga.* 423, 23 S. E. 395], where it was held that an instrument executed in the form of a warranty deed and which conveys to the grantee therein named the premises described, to have and to hold, together with certain other described property which may be on the premises 'at the said William E. Goff's [the grantor] and Ruby Goff's his wife's death,' is a deed and not a will, and conveyed to the grantee the legal title in fee in presenti, with the right of

possession and enjoyment postponed to the death of the grantor and his wife." And in *Crawford* v. *Thomas,* 150 *Ga.* 435 (104 S. E. 211), it was held that "An instrument attested by three witnesses, and in all respects in the form of a deed, should, though it contains the words, 'this deed goes into effect at the death of me and my wife,' be treated, not as a will, but as a conveyance passing title in presenti, with right of possession postponed till the death of the maker and his wife."

The case of *Baxter* v. *Chapman,* 147 *Ga.* 438 (94 S. E. 544), cited by the defendant, is not in point. In that case the instrument was signed and witnessed by three persons, and was not to be delivered until "upon my death;" and it was further "distinctly understood by these presents that this deed of conveyance is not to take effect until after my death." And other cases cited by the defendant in error as controlling of the present case are distinguishable. Considering the authorities cited we reach the conclusion that it was the intention of the grantor to convey the title to the fifty acres of land to his great-nephew and namesake in presenti, and that the possession of the land and the collection of the rents and profits therefrom was to remain in the grantor during his life.

■ One other question made by the record needs to be considered; and that is, was the deed in question delivered as required by law? The law requires that a deed to lands in this State must be in writing, signed by the maker, attested by at least two witnesses, and delivered to the purchaser, or some one for him, and be made on a valuable or good consideration. Civil Code (1910), § 4179. The evidence tended to show that the grantor delivered the deed to the father of the plaintiff, who was a minor of tender years, and that in doing so he turned over to the father of the grantee not only the deed but the keys to his safety-box in the bank where the deed was, with the instruction to keep them for the minor grantee. This being so, we are of the opinion that the delivery of the deed and the keys to the father was a delivery of the deed to the grantee, the father being the natural guardian of the grantee. In *Parker* v. *Salmons,* 101 *Ga.* 160 (3) (28 S. E. 681, 65 Am. St. R. 291), it was held: "Where a grandfather delivers to a father a deed conveying to the latter's daughter (an infant of tender years), in consideration of love and affection, title

to a tract of land, such delivery to and possession of the deed by the father is evidence of delivery to the infant." And see *Watson* v. *Myers*, 73 *Ga.* 138. That ruling is controlling here. There is authority that "non-delivery shall not be raised against minors." *Harrison* v. *Hester*, 160 *Ga.* 865, 870 (129 S. E. 528).

So we are of the opinion that the paper under consideration is a deed and not a will, and that the deed was delivered. It follows that the court erred under the pleadings and evidence in granting a nonsuit. *Judgment reversed. All the Justices concur.*