**WHITE CLEANERS & DYERS et al. v. HUGHES, Sheriff and Tax Collector et al.**

No. 542.

District Court, W. D. Louisiana, Shreveport Division.

March 16, 1934.

Leo R. Werrtheimer, of New Orleans, La., for complainants.

Robt. J. O'Neal, of Shreveport, La., for respondents.

Before FOSTER, Circuit Judge, and DAWKINS and BORAH, District Judges.

DAWKINS, District Judge.

The plaintiffs, consisting of a number of corporations engaged in the laundry, dry cleaning, and dyeing business in Shreveport, have assailed certain provisions of the general license law of the state imposing occupation taxes (Act No. 190 of 1932) in so far as it applies to their business, on the following grounds, to wit:

(1) That under section 8 of article 10 of the Constitution of the state, those engaged in mechanical pursuits, such as petitioners, are exempt from license taxes, but section 25 of the act attempts to impose the tax upon their business, based on the gross annual receipts.

(2) That the Supreme Court of the state, in State v. Up-To-Date Shoe Repairing Co., Inc., 175 La. 917, 144 So. 714, 716, has construed this exemption as applying only to "natural persons engaged in mechanical pursuits," and as thus interpreted it violates the first section of Amendment 14 of the Constitution of the United States, in that it denies to the corporate petitioners the equal protection of the law.

(3) That said statute further discriminates as between them and Civil War veterans engaged in the same business who are exempted from the tax.

A further question was raised in oral argument and in brief, to the point that since the statute levies the license based upon gross receipts from both intra and interstate business, it is invalid under the commerce clause of the Federal Constitution (article 1, § 8, cl. 3) giving to Congress the right to regulate interstate commerce, as a part of petitioners' business comes from the state of Texas.

Defendants have moved to dismiss the bill (1) for want of jurisdiction in this court as to the amount involved, and (2) because it does not present a "substantial federal question."

### Motion to Dismiss.

It is true that as to none of the plaintiffs does the license tax, with penalties for any one year, amount to $3,000, but there is no law of the state which permits them to pay and sue to recover it back. The statute also, after certain delays and demands, authorizes procedure to prevent the carrying on of the business until the tax has been paid, under heavy penalties in the nature of moneyed recoveries for failure to display the license; and, taken altogether, we think this involves the right of the complainant to do business to such extent that the amount in controversy exceeds the sum of $3,000 in each instance. For these reasons, we find that the court has jurisdiction. The case does involve a substantial question as to the equal protection of the law under the Federal Constitution, and the motion to dismiss should, therefore, be overruled.

### On the Merits.

The facts are that originally two of the plaintiffs were individuals, operating under trade-names, and corporations engaged in the laundry, dry cleaning, and dyeing business in the city of Shreveport. Subsequently the individuals were permitted to withdraw. They solicit and receive clothing, hats, household supplies, etc., which are washed, cleaned, or dyed at fixed rates in the plants located in said city. The work is done both by machinery and by hand. The clothing, etc., are gathered up by employees in wagons or trucks in most instances, but in others are delivered and called for by the owners in person. There are several unincorporated concerns engaged in the same business, the volume of some being larger and others smaller than that of the corporate petitioners. It was shown that the individual petitioners who withdrew would be compelled to pay the tax, to wit,

White Cleaners & Dyers, owned by J. L. White, and Barrel Cleaners, owned by Don A. Rials. It was likewise shown that all individual operators are required to pay the tax except those who actually perform manual labor themselves in the plants; and this is the real test applied, all others, whether conducted by individuals or corporations, being required to pay the license tax for the privilege of doing business.

There was also offered in evidence a certificate of the superintendent of public health of the city of New Orleans, to the effect that there are "436 steam laundries, steam cleaning and pressing plants in the City of New Orleans, of which number approximately 29 are corporations."

A certificate of the state treasurer shows there are 2,348 veterans and widows of veterans of the Civil War on the state pension roll.

We do not deem it necessary to describe the operations of laundries, dry cleaning, and dyeing plants as the same are well known.

The Act No. 190 of 1932 is the general license law of the state. Section 2 requires the tax collector of the state to begin collecting the tax on the 2d day of January of each year and provides that the same "shall be due and collectible during the first two (2) months of each year, and all unpaid licenses shall become delinquent on the first day of March of each year. * * *"

It then proceeds to classify and fix the amount of the license tax as to each kind of business, profession, or occupation, according to its nature, and as to the class in which plaintiffs fall, it provides as follows: "That for every individual, firm, association or corporation carrying on the profession or business of steam dyeing, steam cleaning, steam pressing, or the business of steam or electric laundering, the license shall be based upon the gross annual receipts from such profession or business, and shall be fixed and graded as follows, to-wit." Section 25.

The tax begins at $2,000. Where the gross annual "receipts are $1,000,000 or more," and is gradually reduced to a minimum of $15, where said "receipts are less than $5,000."

Section 45 declares that the "annual receipts, * * * referred to as a basis of licenses, are those for the year for which the license is granted; the standard for their estimation shall be, prima facie, of the preceding year if the business has been conducted previously by the same party, or by parties to whom he claims to be successor. If the firm or company be new, the amount of gross sales for the first two months shall be considered the basis, and six times that amount shall be estimated as the annual receipts of business. * * *"

Section 48 provides that if a business be conducted without the license required by the act, then the officers whose duty it is to issue the license shall, in the proper court, "sue out a rule on the party" to show cause on the fifth day after service, exclusive of holidays, why he should not pay the amount of the license tax claimed and penalties, "and be ordered to cease from further pursuit of said business until after having obtained a license." If the rule is made absolute it operates as a judgment in favor of the state, and "every violation of the order shall be considered as a contempt thereof, and punished according to law. * * *" The section requires that the said license shall be kept posted in the place of business, "under a penalty of not less than ten nor more than one hundred dollars, recoverable by the tax collector before any court of competent jurisdiction. * * *"

Sections 56 and 58 are quoted, as follows:

"Sec. 56. That all gross receipts derived from any mercantile business or occupation whatsoever, as hereinbefore provided, whether earned within or without the State, shall form the proper basis upon which all licenses shall be assessed and collected by the tax collector.

"Sec. 58. That license taxes levied by this Act shall not apply to blind persons, who are exempted from license taxes by Act No. 130 of 1924, nor to Confederate soldiers, their wives or widows, who are exempted from license taxes by Act No. 158 of 1916, as amended by Act No. 11 of 1922."

Section 59, which immediately precedes the last and repealing section, declares that if "any clause, sentence, paragraph, or part of this Act" is declared invalid, it shall not affect any other provision.

Plaintiffs have been called upon by the proper authorities to pay the tax, which operates as a lien upon their property, in amounts as set out in the petition and, for the failure to do so, may be proceeded against according to the provisions of the act.

Section 8 of article 10 of the present Constitution of the state, adopted in 1921, reads as follows: "Section 8. License taxes may be levied on such classes of persons, associations of persons and corporations pursuing any trade, business, occupation, vocation or profession, as the Legislature may deem proper, except clerks, laborers, ministers of

religion, school teachers, graduated trained nurses, those engaged in mechanical, agricultural, or horticultural pursuits or in operating saw mills. Such license taxes may be classified, graduated or progressive. * * * "

■ We, of course, are bound by the construction placed upon the Constitution and laws of the state by its court of last resort. The real basis of attack upon the license law in this case is the alleged discrimination resulting from the holding by the state Supreme Court in the case of State v. Up-To-Date Shoe Repairing Company, Inc., 175 La. 917, 144 So. 714, 715, that the exception or exemption above quoted does not apply to corporations engaged in mechanical pursuits. In that case it was decided, notwithstanding the express finding that the business of the alleged taxpayer was a mechanical pursuit within the meaning of the Constitution, the exemption did not apply to it as a corporate entity. The reason given was that the court had consistently held under the Constitutions of 1879, 1898, 1913, and 1921 that this exemption "applies only to a mechanic who performs his work with his own hands, although the exemption is not denied him because he may obtain the help of other mechanics," citing the cases of Theobalds v. Conner, 42 La. Ann. 787, 7 So. 689; City of New Orleans v. O'Neil, 43 La. Ann. 1182, 10 So. 245; State v. NcNally, 45 La. Ann. 44, 12 So. 117; City of New Orleans v. Pohlmann, 45 La. Ann. 219, 12 So. 116; City of New Orleans v. Leibe, 45 La. Ann. 346, 12 So. 625. It quoted approvingly from the first of these cases, as follows: " 'A "mechanic," according to Worcester, is one employed in mechanical or manual labor; and "mechanical" is defined to be "employment in manual labor." Taking the phrase "engaged in mechanical pursuits" according to these definitions, and it is clear that the framers of the constitutional article intended to relieve from license those *persons who are engaged, from day to day, in the performance of manual labor in mechanical or agricultural pursuits;* and that the master builders and contractors, who employ others to do the work which they merely superintend, should, like other professional men, pay the license tax.' " (Italics by the Supreme Court.) See, also, City of New Orleans v. Robira, 42 La. Ann. 1099, 8 So. 402, 11 L. R. A. 141; City of New Orleans v. Lagman, 43 La. Ann. 1180, 10 So. 244; City of New Orleans v. Bayley, 35 La. Ann. 545; State v. Hirn, 46 La. Ann. 1443, 16 So. 403; State v. Dielenschneider, 44 La. Ann. 1116, 11 So. 823. In some of the cited cases it was pointed out that the persons denied the exemption, including individuals and corporations, employed others to do the labor under their supervision or management but did not perform it themselves; and it was further said in the Up-To-Date Shoe Repairing Case:

"This jurisprudence seems to be fully warranted by the language of the exempting clause itself. It appears to us that the author when he wrote the clause had in mind natural persons and not artificial persons. The exemption is granted to clerks, laborers, ministers of religion, school teachers, and graduated trained nurses, all natural persons, and also to those (natural persons) engaged in mechanical pursuits.

"If, as the jurisprudence holds, master builders and other persons who employ mechanics to do their work are amenable to license taxes, we see no good reason why corporations who also employ mechanics to do their work should not likewise be amenable to such taxes.

"A corporation cannot possibly perform manual labor in mechanical pursuits. It may employ mechanics to do the work necessary for the transaction of its business, which may be of a mechanical nature; but, after all, it is the employer corporation and not the employee mechanics that is actually engaged in operating the corporate business. The corporation deals with the public and the public deals with the corporation; each being responsible to the other. No contractual relations whatever exist between the corporation's mechanics and the corporation's patrons. The corporation pays its employees the agreed wages, and, presumably, derives a profit from the difference between the amount of these wages, plus other operating expenses, and its receipts from the patrons of the enterprise in which it is engaged.

"The purpose of the law, as we see it, is to exempt and encourage the mechanic who actually works at his trade with his own hands and not to exempt and protect an artificial being that merely profits by the use of the mechanic's labor and skill in the conduct of its own business."

■■ Reference has been made by counsel for the petitioners in the present suit to the case of State v. Chicago Hat Works, 174 La. 814, 141 So. 844, 845, wherein the alleged tax debtor, an individual operating under a trade-name, was engaged in cleaning and blocking hats; and, notwithstanding the fact he employed others to assist therein, was held to be exempt from the tax. The opinion in that case recites that the defendant worked "daily in his cleaning establishment, and uses his

hands and machinery in the cleaning and blocking of hats; that he has two men at the bench working with him, and a girl to help sew the bands on the hats; and that, if he is busy, he gets extra help." It is further stated that the size of the income makes no difference. An examination of this case and all of the cases cited shows that the distinction made between those who are held to owe the tax and those who do not is that the latter actually perform the manual labor themselves; whereas, the former carry on the business through persons who are hired to do the work. Before this court can say that this holding renders the act invalid under the Federal Constitution (Amendment 14) as denying the equal protection of the law, we must conclude that the distinction relied on by the state court is without substance and unreasonable. Stebbins v. Riley, 268 U. S. 137, 143, 45 S. Ct. 424, 69 L. Ed. 884, 44 A. L. R. 1454. Is it unreasonable to assume that natural persons engaged in such pursuits, even though they employ assistants, will not continue to work with their own hands when the business, through successful operation, acquires substantial proportions? Or that the excusing from the tax also of those who have a few persons to help in the small shop, when the business has grown to the point that it cannot be done by the proprietor alone, will not result in creating unfair competition with corporations, individual and contracting employers? In the present state of our economic and social development, amidst a world-wide depression, the press, magazines, and books are filled with discussions and arguments in support of one theory or another; some asserting that the machine age, mass production, and large corporate entities, with their stifling influence upon the small artisan or shop keeper, are converting the individual workers into automatons or mere cogs in a vast machine which will eventually prove a Frankenstein. On the other hand, we see the present national administration, pursuant to the most extraordinary powers ever granted to an executive in peace time, regimenting industry and business of all kinds, including agriculture, into great units, covered by codes and regulations to establish uniform prices and practices, including hours of labor. Contemporaneously, the situation is far more intense and the measures adopted far more drastic in other leading nations of the world. No man can say what the ultimate outcome will be. We have no doubt that the Supreme Court of the state, in the several decisions referred to in the case relied upon by the complainants as giving the law an unconstitutional meaning, was correct in the statement that the purpose of the exemption was to encourage and assist the man who labors with his own hands; and we also agree that the hiring of a few assistants, who likewise labor with their hands in carrying on the businesses or mechanical pursuits covered by the exemption, does not serve to remove the alleged tax debtor from the favored class. There appears to be a clear distinction, and one which is reasonably sufficient for the Legislature to act upon it without running afoul of the Federal Constitution, between the man who labors and earns his living by the sweat of his brow and a corporate entity or individual contractor or employer who makes its or his profits from the hired labor of others. In the former instance, the return is governed by the industry, skill, and effort of the individual; whereas, in the latter, it is affected to some extent at least by the extent to which the wages of the workmen may be kept low, and the success of the corporate or individual employer in selecting agents and employees who may be capable or imbued with loyalty to the employer's interest. It goes without saying, that the corporate being cannot itself perform manual labor. It also enjoys certain advantages (or at least its stockholders do) of being protected from liability for its debts, as well as faults and mistakes beyond its capital and assets, as well as continuous existence, market value for and easy transfer of the stock, etc. See Flint v. Stone Tracy Co., 220 U. S. 107, 162, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Ft. Smith Lbr. Co. v. Arkansas, 251 U. S. 532, 534, 40 S. Ct. 304, 64 L. Ed. 396. While the tax in this case cannot be denominated either a franchise or income tax, still it is a payment for the privilege of doing business, based upon volume, which smacks very strongly of the elements of both and as to which it is uniformly held a distinction may be made between corporations and individuals. In none of the decisions of the state Supreme Court has it been held that the business was exempt from the tax solely because it was owned by an individual. On the contrary, in every instance where he merely employed others to do the work the tax was sustained. Likewise a corporation is held not to be exempt for the simple reason that it, the imaginary being, cannot perform manual labor.

Plaintiff has cited the case of Quaker City Cab Co. v. Pennsylvania, 277 U. S. 389, 48 S. Ct. 553, 554, 72 L. Ed. 927, to the point that a distinction cannot be made based solely upon the fact that the ownership of the thing taxed is in a corporation while exempting in-

dividuals in the same situation. In that case the state imposed a tax of eight mills "upon the dollar upon the gross receipts" of every corporation foreign or domestic "received from passengers and freight traffic transported wholly within this state. * * * " It did not require the payment of this tax by partnerships and individuals so engaged. The Supreme Court said: "It (the tax) is laid upon and is to be considered and tested as a tax on gross receipts; it is specifically that and nothing else."

Three of the justices, Holmes, Brandeis, and Stone, dissented. Justice Brandeis delivered a very strong dissenting opinion, in which the other two concurred. The tax in the present case is not one upon gross receipts as such, but is a license tax in which the amount of gross receipts is used to determine the size of the tax. Clearly, therefore, it is a tax for the privilege of doing business as distinguished from either property tax or a tax upon the business or its receipts; and the classification by which one is exempt, and the other required to pay it, is based upon the fact that the former involves the performing of manual labor by the tax debtor himself.

In Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312, the tax laid by Congress upon corporations (36 Stat. 11, 112, c. 6, § 38) was under attack. It imposed upon "every corporation, joint stock company or association, organized for profit, * * * a special excise tax with respect to the carrying on or doing business * * * equivalent to one per centum upon the entire net income. * * * " In analyzing the statute, the court, through Justice Day, at pages 145, 146, of 220 U. S., 31 S. Ct. 342, 346, said: "While the mere declaration contained in a statute that it shall be regarded as a tax of a particular character does not make it such if it is apparent that it cannot be so designated consistently with the meaning and effect of the act, nevertheless the declaration of the lawmaking power is entitled to much weight, and in this statute the intention is expressly declared to impose a special excise tax with respect to the carrying on or doing business by such corporation, joint stock company or association, or company. It is therefore apparent, giving all the words of the statute effect, *that the tax is imposed not upon the franchises of the corporation, irrespective of their use in business, nor upon the property of the corporation, but upon the doing of corporate or insurance business,* and with respect to the carrying on thereof, in a sum equivalent to 1 per centum upon the entire net income over and above $5,000 received from all sources during the year; that is, *when imposed in this manner it is a tax upon the doing of business, with the advantages which inhere in the peculiarities of corporate or joint stock organization of the character described."*

I quote further from this case as follows:

"Within the category of indirect taxation, as we shall have further occasion to show, is embraced a tax upon business done in a corporate capacity, which is the subject-matter of the tax imposed in the act under consideration. The Pollock Case [157 U. S. 429, 15 S. Ct. 673, 39 L. Ed. 759] construed the tax there levied as direct, because it was imposed upon property simply because of its ownership. *In the present case the tax is not payable unless there be a carrying on or doing of business in the designated capacity, and this is made the occasion for the tax, measured by the standard prescribed. The difference between the acts is not merely nominal, but rests upon substantial differences between the mere ownership of property and the actual doing of business in a certain way."* Page 150 of 220 U. S., 31 S. Ct. 342, 348.

" * * * The tax under consideration, as we have construed the statute, may be described as an excise upon the particular privilege of doing business in a corporate capacity, i. e., with the advantages which arise from corporate or quasi corporate organization; or, when applied to insurance companies, for doing the business of such companies. As was said in the Thomas Case, 192 U. S. 363 [24 S. Ct. 305, 48 L. Ed. 481], supra, *the requirement to pay such taxes involves the exercise of privileges, and the element of absolute and unavoidable demand is lacking. If business is not done in the manner described in the statute, no tax is payable."* Page 151 of 220 U. S., 31 S. Ct. 342, 349.

" * * * *The thing taxed is not the mere dealing in merchandise, in which the actual transactions may be the same, whether conducted by individuals or corporations, but the tax is laid upon the privileges which exist in conducting business with the advantages which inhere in the corporate capacity of those taxed, and which are not enjoyed by private firms or individuals."* Page 161 of 220 U. S., 31 S. Ct. 342, 353. (Italicizing by the writer of this opinion.)

See, also, Spreckels Sugar Refining Co. v. McClain, 192 U. S. 397, 24 S. Ct. 376, 48 L. Ed. 496.

We think it perfectly patent that there is no discrimination on the face of either section

8 of article 10 of the Constitution of this state, or section 25 of Act No. 190 of 1932, since the first exempts or excepts those engaged in manual pursuits without any reference to corporations or individuals, and the latter requires the payment of the license by those engaged in the laundry, dry cleaning, and dyeing business without such distinction. The assault is made by plaintiffs solely upon the theory that the Supreme Court of the state has read into the Constitution the distinction heretofore discussed. It is not even alleged in the petition that the administrative officers have applied the statute in a discriminating manner, and hence a showing to that effect, if it had been made, would not be relevant under the pleading. The writer of this opinion is convinced that, even if this tax had been levied solely upon corporations, it is of such a nature, i. e., for the privilege of doing business, that it would have been sustained by the Supreme Court in view of the decision in the Flint Case, supra, and those cited therein.

Our conclusion is that the act, or section 25 (which is the one applicable to plaintiff's business), is not invalid under the equal protection clause of the Federal Constitution. See Quong Wing v. Kirkendall, 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350, and cases cited therein.

The contention that the statute discriminates between plaintiff and the Civil War veterans is without foundation when the matter is carefully examined. The section 58 quoted above declares that the tax "levied by this Act shall not apply * * * to Confederate soldiers, their wives or widows, *who are exempted from license taxes by Act No. 158 of 1916, as amended by Act No. 11 of 1922."* (Italicizing by the writer of this opinion.) The laundry, dry cleaning, and dyeing business is not among those enumerated in Act No. 158 of 1916, as amended by Act No. 11 of 1922. The occupations, professions, and businesses as to which these veterans are exempt by the last-mentioned act are: "Section 2. * * * Auctioneer, barber, bicycle dealer, contractor, cotton weigher, magic lantern, feed stable, lunch stand, restaurant, peddler, news stand, real estate agent, real estate broker, to trade, traffic or sell any merchandise, whether on foot, by vehicle or in stores, when the stock of goods never exceeds Two Thousand Dollars."

There are many other occupations, professions, etc., enumerated in the license tax law of 1932, as to which these exempt classes are not relieved. If the construction which we have put upon section 58 was not intended and it meant to exempt veterans, etc., from license taxes for all kinds of business, occupations, etc., covered by the act, then there was no sense in referring to the acts of 1916 and 1922 at all. The Legislature would simply have said that the act of 1932 did not apply to these classes.

As to the contention that the act violates the commerce clause of the Federal Constitution because it bases the tax upon gross receipts from both intra and interstate business, raised for the first time in oral argument and discussion in the brief, we do not think the same can be considered for the reason that it is not pleaded in the bill.

The preliminary injunction will, therefore, be denied.