Stafford *vs.* The State of Georgia.

. receiver to take charge of the property and hold the future rents subject to the order of the court. The court granted the prayer, and directed the receiver to pay half the rents in future to the husband, and retain the other half to await the final decree:

*Held*, that there is equity in the bill, and that the court did right in appointing a receiver to take charge of the property, and to preserve the future rents to await the final decree.

Equity. Husband and wife. Receiver. Before Judge BUCHANAN. Troup Superior Court. November Term, 1875.

Report unnecessary.

B. H. BIGHAM ; B. L. HARRIS, for plaintiff in error.

FERRELL & LONGLEY, for defendant.

---

JACOB STAFFORD, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. Upon a trial for the offense of murder, where the only incentive to the act appears to have been robbery, it was competent to show that the defendant, some week or ten days prior to the homicide, proposed to a witness to rob an old man and woman, who lived on the edge of town and who had money "piled up."

2. An affidavit of a juryman as to what he intended by his verdict, is inadmissible.

3. A confession made by the defendant to a fellow-prisoner, who was in jail for stealing, and grossly irreligious, as appears from his own evidence, but who read the bible and sang psalms to him, and told him that if he were guilty he had better confess and seek his God, was admissible. WARNER, Chief Justice, dissented.

4. Where a witness swore to a certain state of facts upon one trial, and to the contrary upon a second trial of the same case, admitting that his testimony first given was false, it was error in the court to fail to charge that if a witness, knowingly and wilfully swears falsely in a material matter, his testimony should be rejected entirely, unless it be corroborated by the facts and circumstances of the case or other credible evidence.

Criminal law.    Evidence.    Jury.    Verdict.    Confessions. Witness.    Charge of Court.    Before Judge HOPKINS.    Fulton Superior Court.    April Term, 1875.

Reported in the decision.

R. S. JEFFRIES; H. C. GLENN, for plaintiff in error.

JOHN T. GLENN, solicitor general; HOKE SMITH, for the state.

WARNER, Chief Justice.

The defendant was indicted with John Purifoy for the offense of murder, and charged with the unlawful killing of John Casey, in the county of Fulton.   On the trial of the defendant, the jury, under the charge of the court, found him guilty, and recommended him to the mercy of the court.   The defendant made a motion for a new trial on the several grounds set forth therein, which was overruled by the court, and the defendant excepted.

The defendants were tried separately, and both found guilty, but the court granted a new trial in the case of Stafford, and at the same term of the court, Stafford was again put on his trial, and it is the proceedings had on the last trial that we are now called on to review.

It appears from the evidence in the record that the deceased kept a grocery store in the basement story of the house in

Stafford *vs.* The State of Georgia.

which he and his family resided, on Mitchell street, one of the public streets in the city of Atlanta; that on the night of the 26th of January, 1875, about nine o'clock, two colored men came there and inquired for some whisky to drink; they passed through the room where Mrs. Casey, the wife of the deceased, was sitting, and went down into the store-room, the deceased going with them. Shortly after they went down there, Mrs. Casey heard a noise in the room below, and one of the parties who went down with the deceased came up, and hurriedly ran off through the house where Mrs. Casey was, who then went to the top of the steps and looked down into the basement room, and saw Purifoy have her husband by the throat; when she gave the alarm he ran off; found the deceased lying on the floor, his throat cut, and bleeding profusely; appeared to have received two or three blows on the head; knew Purifoy and identified him, but did not know who the other man was, and could not identify him, and did not do so, either then or at the trial; no one lived in the house besides the deceased and his wife and their two children, who, at the time of the occurrence, were in bed up-stairs. The deceased lived four days after the wounds were inflicted. Purifoy and the defendant were arrested and brought into the presence of the deceased before he died, who recognized Purifoy as one of the men who went into the basement store with him that night, but did not recognize the defendant, Stafford. When asked if he recognized the defendant, Stafford, as one who went into the basement store with him, he said he did not know him. John Horsham, a witness for the state, testified that a week or ten days before Casey was killed, defendant said to him: "Did not I want to make some money?" I said, "yes; where is it?" He said, "out on the edge of town, where an old man and woman lived together, and had money piled up; me and Jerry Barracks, and Henry Humphreys, want to make a raise, and we would like you to go along;" told him "I would go, and said, when will you go?" He said, "to-morrow night." I said, "where will you meet?"

He said, "at Henry Humphrey's, up-stairs, over the drug store, at eight o'clock.   I did not meet him."

This evidence was objected to by the defendant, and its admission by the court is one of the errors assigned.

Patent Ridgely, a witness sworn for the state, stated that he was a printer by profession; that he was put in jail for stealing some birds, and while in jail with the defendant, he testified to certain confessions made by the defendant to him, to-wit: that he and Purifoy went to get the money, defendant said there was a soap box, or a candle box, full of greenbacks behind the counter in the store, and that he and Purifoy went there to get it; that they had gone from the corner of Hunter and Pryor streets and met there, etc.   When asked how defendant came to talk to him about it, said that defendant came to him to get advice in his case, and wanted witness to help him out, and he did advise him the best way he knew, read the bible to him, and psalms, told him he thought he had better confess and seek his God, told him if he had confessed, to stand to it by God, or God damn it; don't profess to be a religious man.  On his cross-examination the witness was asked, "when he came and asked you what to do, did you not tell him it would be better for him to acknowledge it?"   To which he replied: "I said if he was guilty of it, it would be better for him to acknowledge it; that is what I said."

The defendant then moved the court to rule out all the testimony of this witness in relation to the defendant's confessions, which motion was overruled by the court, and this is assigned as error.

John Purifoy, the accomplice, was introduced as a witness on the part of the state, who testified that he was to be hung day after to-morrow; that defendant and himself made a plot, he, the witness, to kill Mr. Casey, and defendant to go back into the house and kill Mrs. Casey, and then get the money; defendant was there; first mentioned it to witness two or three nights before; they went to Casey the night before the killing, put an axe in pawn for whisky; done nothing that night; defendant came to Henry Banks' for him the next night, to

Stafford *vs.* The State of Georgia.

go again, and the thing was done.  Witness knocked Casey down and cut his throat; defendant did not do it.  On cross-examination the witness was asked, "Did you not testify a few days ago against Jake Stafford?" "Yes sir." "Did you not swear on the bible to tell the truth then?" "Yes sir." "On that trial, when this knife was held up to you, did you not say it was not your knife?" "Yes, I did." "When you were asked who cut Mr. Casey's throat, did you not say that Jake Stafford did it?" "Yes." "When you were asked who knocked him on the head, did you not say that Jake Stafford did it?" "Yes." "When you were asked what it was done with, did you not say with this iron?" "I reckon before, I said that?" "When you swore that, did you not swear falsely?" "I swore that much falsely."

The court was requested to charge the jury in writing: "If a witness knowingly and wilfully swears falsely in a material matter, his testimony should be repelled entirely," which request was refused, but charged the jury in relation to this point in the case as follows: "The credibility of witnesses is a question for you.  Witnesses may be impeached by contradictory statements.  If the proof shows a witness made one statement on the stand and another and different statement elsewhere, the extent to which his credibility is affected is a matter for you to determine.  These rules apply to the witnesses in the case, without reference to whether introduced by the state or the defense."

The charge of the court is excepted to because it failed to charge the well-settled principle of law applicable to the facts of the case, that "if a witness knowingly and wilfully swears falsely in a material matter, his testimony should be repelled entirely, unless it be corroborated by the facts or circumstances of the case, or other credible evidence."

The defendant introduced an affidavit of one of the jurors who tried the case on the motion for a new trial, in which he stated that the jury would not have found the defendant guilty unless they had believed that by recommending him to

the mercy of the court, it would only have subjected him to be punished by imprisonment in the penitentiary for life.

1. There was no error in admitting the evidence of Horsham, as it was a circumstance going to show the defendant's willingness to engage in an unlawful transaction for the purpose of obtaining money, and when taken in connection with other facts in the case, was proper evidence to be submitted to the jury for their consideration.

2. The affidavit of the juryman as to what they intended by their verdict, was properly rejected by the court.

3. My own individual judgment is that the testimony of Ridgely, in relation to the confessions of the defendant made to him in the jail, should have been ruled out by the court under the statement of facts disclosed in the record. The Code declares that to make a confession admissible it must have been made voluntarily, without being induced by another, by the *slightest* hope of benefit or the *remotest* fear of injury: Code, section 3793: See *Irwin vs. The State*, 53 *Georgia Reports*, 39. There can be no reasonable pretext that the confessions of the defendant were made under the spiritual exhortation of such a man as his own evidence and the evidence of other witnesses in the record show Ridgely to be. From that evidence he does not appear to have been capable of making a spiritual exhortation to anybody unless it was in behalf of an evil spirit. He states that the defendant came to him for advice in his case, and that he told him if he was guilty of it, it would be better for him to acknowledge it. He also states that the defendant confessed to him that he hit Casey on the head twice; whereas Purifoy, the other witness for the state, says that the defendant did not strike Casey at all; that he did it. What motives may have induced this witness, who was seeking a pardon for his own criminal conduct, to extort confessions from the defendant no one can tell, and the only safe rule in such cases is, in my judgment, to adhere closely to the statute, and reject all evidence of confessions whenever the same are induced by another, by the *slightest* hope of benefit or the *remotest* fear of injury. The

majority of the court, however, are of the opinion that the testimony of Ridgely, as to the confessions of the defendant, were admissible in evidence, and the judgment of the court below, in relation to that point in the case is, therefore, affirmed.

4. But we are all of the opinion that the court erred in failing to charge the jury, in view of the facts of the case, "that if a witness, knowingly and wilfully, swears falsely in a material matter, his testimony should be rejected entirely, unless it be corroborated by the facts and circumstances of the case, or other credible evidence:" *Pierce vs. The State*, 53 *Georgia Reports*, 365. In addition to the witness Purifoy being an accomplice in the crime with which the defendant was charged, he stood before the court and admitted that he had sworn, a few days previously, in the same court, on the trial of the same issue, to certain material facts involved in that issue; he then swears to an entirely different state of facts in relation to the same transaction. After the witness was sworn on the second trial of the issue between the state and the defendant, the court had before it judicial evidence that the witness had sworn falsely in relation to material facts, either upon the one trial or the other. Did he swear knowingly and wilfully false upon either trial, and which one? As the witness stood before the court, he was not entitled to any credit, under the law, in relation to the material facts about which he had falsely testified under oath at the first trial, unless the truth of his statement on the last trial was corroborated by the facts and circumstances of the case, or other credible evidence, and that was a question for the jury under a legal and appropriate charge of the court. When we take into consideration the statement of the witness, Purifoy, that he and the defendant were at Casey's house the night before the crime was committed, and pawned an axe for whisky, coupled with the fact that neither Casey nor his wife recognized the defendant, when brought before them, as being one of the parties who was there the night the wounds were inflicted, but did recognize Purifoy, and identified him, the evidence of

Purifoy as to the defendant's being there, was a vital and material question in the case, so far as the defendant was concerned, and that depended entirely on the credibility of the witness, Purifoy, as no other witness but him proved the defendant was there. The charge of the court as given to the jury, did not comply with the requirement of the law applicable to the facts of the case, and although the request to charge was objectionable, still, it was the duty of the court to give the law applicable to the facts in charge to the jury, the more especially as attention was called to it by the defective request of the defendant. In our judgment, in view of the facts as disclosed in the record of this case, the court should have charged the jury, that if they believed from the evidence that the witness, Purifoy, had, knowingly and wilfully, sworn falsely in a material matter in issue between the same parties, on the first trial of the case, then they should reject his testimony entirely, unless its truth was corroborated by the facts and circumstances of the case, or other credible evidence, and inasmuch as the court failed so to charge the jury, we reverse the judgment of the court below and order a new trial. The defendant may be guilty, or he may not be, but whether he is or not, he should be tried in accordance with the laws of the land, and it is our duty to see to it that he is so tried.

Let the judgment of the court below be reversed.