## KELLY v. THE STATE.

1. Where a witness testified to material facts, and in connection therewith admitted that on a former occasion when the case was being investigated in a court of inquiry she had testified contradictory to the testimony given on the trial, and in an effort to explain why she had delivered contradictory testimony stated that the former testimony had been given because she had been influenced to do so by another person, evidence that the other person was also examined in the court of inquiry and delivered testimony similar to that which was then delivered by the witness, and other evidence that the testimony of such other person as delivered before the court of inquiry was false, was inadmissible for the purpose of corroborating the testimony of the witness concerning the explanations given for having delivered contradictory testimony.

2. Under no view of the evidence was the law of voluntary manslaughter involved.

3. Under one phase of the case involuntary manslaughter in the commis-

sion of an unlawful act was involved, and it was erroneous to omit to charge on that subject.

4. The charge upon the subject of impeachment of witnesses was not open to the criticism made upon it. The omission to charge, without request, on the subject of impeachment of witnesses was not erroneous.

5. In the light of the charge on the subject it was not erroneous, in the absence of appropriate request, for the judge to omit to define more specifically the words "successful impeachment."

MAY 11, 1916.

Indictment for murder. Before Judge Charlton. Chatham superior court. January 3, 1916.

*R. L. Colding* and *Osborne & Lawrence,* for plaintiff in error.

*Clifford Walker,* attorney-general, *Walter C. Hartridge,* solicitor-general, and *Mark Bolding,* contra.

ATKINSON, J. J. T. Kelly was convicted of the murder of James Egense, and the jury in their verdict recommended him to the mercy of the court. He made a motion for new trial, which was overruled, and he excepted.

1. When put on trial the accused denied commission of the homicide, and sought to establish an alibi. Evidence was introduced to the effect that at the time the State contended the crime was committed the accused was with a woman named Shuman at a house remote from the scene of the crime, of which the woman was an inmate, and of which another woman named Herndon was proprietress. While making his statement to the jury the accused stated that he was with the Shuman woman at the house above indicated, at the time the State contended the homicide was committed, and that the Shuman woman had so testified in the police court. The Shuman woman was introduced by the State in rebuttal, and testified in effect that her testimony in the police court was as stated by the defendant, but that such testimony was untrue, and that she had not seen the accused at all on the night of the homicide. She gave as a reason for swearing falsely in the police court that she had been persuaded to do so by the Herndon woman. In an effort to corroborate this part of the testimony, the State contended that the testimony in the police court was delivered in pursuance of a conspiracy between the two women that each should swear falsely to the effect that they saw the accused at the house on the night of the homicide. To support such contention, after the Shuman woman had testified, the State introduced also the testimony of a police officer to the

effect that he heard the Herndon woman testify in the police court that she saw the accused at her house at the time above indicated; and also testimony of two other witnesses from Augusta, Georgia, to the effect that they saw the Herndon woman at the time in question in that city, which would have excluded the possibility of her presence at her house in Savannah at such time, and of her having seen the accused there, as it was said she testified in the police court. The testimony of the police officer and that of the two witnesses last mentioned was admitted over stated objections interposed by the accused, and reference was made thereto in the charge to the jury. Complaint was made, in the motion for a new trial, of the admission of the evidence, and also of the charge of the court. The isolated circumstance that the Herndon woman testified falsely in the police court to a fact to which the Shuman woman also testified falsely would not show that the former had persuaded the latter so to swear. It would be a mere matter of two witnesses swearing falsely to the same thing, and would not indicate that either persuaded the other. While the solicitor-general stated that he proposed to show a conspiracy between the two women to swear falsely in the police court, the evidence which he produced for such purpose did not go to the extent of showing an agreement between the two women that each of them should swear falsely. Under the circumstances, the testimony of the police officer and that of the witnesses from Augusta was irrelevant, and was improperly admitted. The error also entered into the charge of the court on the subject, as complained of in one of the grounds of the motion for new trial.

2. A number of the grounds of the motion for a new trial complain of the omission of the judge to charge on the law of voluntary manslaughter. A charge upon that subject should not be given unless it is authorized by the evidence. It is unnecessary, in ruling upon this question, to state the details of the evidence as to the homicide. It is sufficient to say that there was no evidence of any assault upon the accused by the deceased, or evidence of other circumstances sufficient to excite the passion necessary to reduce the killing from that of murder. Under no view of the evidence was the law of voluntary manslaughter involved. *Cyrus* v. *State*, 102 *Ga*. 616 (29 S. E. 917).

3. The 8th ground of the motion for new trial, properly con-

strued, complains of the omission of the judge, without request, to charge on the law of involuntary manslaughter. There was evidence to the effect that the deceased, on the night in question, was lying under a tree by the roadside with his face towards the ground, and while in that position the accused approached unobserved and "struck him five times on the back of his head and his shoulder . . with a limb of a tree." While striking the deceased the accused said, with an oath: "I will kill you." The deceased was rendered unconscious. After striking him as indicated, the accused threw down the stick, kicked the deceased aside from his coat on which he was lying, picked up the coat, and went off along the street. Another witness testified that he was the driver of the ambulance that went after the injured man, whom he picked up on the side of the road. The witness also testified: "He was unconscious; . . a stick beside him in that condition [several pieces of a stick being exhibited]. I can not tell where it was lying with reference to Egense.' It was right close to him; as far as from me to you." The blow was struck at about twenty minutes to ten o'clock at night. The doctor testified that it was a little after midnight when he saw the patient, and "there was a contusion on the back of the skull and back of his neck. He was unconscious, and he twisted and moved about in bed. . . His injury was a desperate one. I had him taken to the operating-room, and made an incision and found that a part of the skull had been driven into his brain, as if you would take an egg on a table and crush it. He did not survive; what marvelled me was that he lived so long. The substance of the brain was pulpified; it was oozing out." Another witness testified that he had "put . . together" the stick identified by the ambulance-driver, and that it was 58 inches long and 8 1-2 or 9 inches in circumference, and on the stick was some hair which he believed was human hair. The pieces of stick as identified were also introduced in evidence. The foregoing is substantially all of the evidence as to the circumstances of the killing. Under the evidence, if the accused was the person who did the killing, it was for the jury to say whether the implement with which the blow was inflicted was a weapon likely to produce death when employed in the manner in which it was shown to have been used; and while the jury would have been authorized to find that it was

such a weapon, the evidence was not of such character as to demand a finding that the implement was a weapon likely to produce death and that the blow was struck with the intent to kill. The evidence would have authorized a verdict of involuntary manslaughter in the commission of an unlawful act. *Dorsey* v. *State,* 126 *Ga.* 633 (55 S. E. 479); *Joiner* v. *State,* 129 *Ga.* 295 (58 S. E. 859); *Anderson* v. *State,* 130 *Ga.* 364 (60 S. E. 863). It was erroneous, therefore, to omit to charge the law of involuntary manslaughter.

4. The tenth ground of the motion for a new trial set up that the charge upon the subject of the impeachment of witnesses was erroneous, because it omitted, without request, to instruct the jury "that when a witness swears willfully and knowingly falsely, his or her testimony ought to be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence." The twelfth ground complains that the judge "failed to charge the jury that as a matter of law a witness was successfully impeached when it was proven to their satisfaction that he or she swore willfully and knowingly falsely, unless said witness was corroborated by circumstances or other unimpeached evidence." The eleventh ground complains that, having omitted to charge as indicated above in the tenth ground, an instruction, "but it is at last within the province of the jury to say how far the impeachment has been successful, and whether or not they will consider the testimony credible," was tantamount to instructing the jury that even in cases where a witness swears willfully and knowingly falsely, his or her testimony need not as a matter of law be disregarded. These three grounds of the motion for new trial may be considered together. The excerpt above quoted constituted merely a fragment of the charge on the subject of impeachment of witnesses, and, when considered in connection with the entire charge on that subject, is not "tantamount" or equivalent to an instruction to the effect as contended above. Upon a proper construction, the charge is not subject to the criticism made upon it; and whether it would have stated a correct proposition of law if it should be construed as contended by plaintiff in error need not be decided. The complaint of the omission to charge without request also fails to show ground for reversal. If the judge had charged as contended, the instruction would have been too broad and would have tended to

confuse the jury. The jury would have been informed that any false swearing by a witness in the case would have served as a basis for impeachment of the witness, whereas the false testimony in order to serve as a basis for impeachment must relate to a matter material to the issue in the case. *Evans* v. *State,* 95 *Ga.* 468 (3), 469 (22 S. E. 298). The above-mentioned grounds of the motion are insufficient to raise the question whether it would have been reversible error to omit to charge, without request, that where a witness swears willfully and knowingly falsely to a fact material to the issue on trial, his entire testimony should be disregarded, unless corroborated by other unimpeached evidence. Had such question been presented, it would have been necessary to apply the doctrine of *Stafford* v. *State,* 55 *Ga.* 591, followed in the case of *Plummer* v. *State,* 111 *Ga.* 839 (36 S. E. 233), which did not apply the rule applied in the later cases to the effect that, in the absence of a timely written request, a charge on the subject of impeachment of witnesses is not required. See cases cited in general note to Park's Penal Code, § 1054.

5. Another ground of the motion complains of the omission of the judge to give the jury a definition of the words "successful impeachment." These words were employed in such manner as would be easily understood by a person of ordinary intelligence. If further elaboration as to their meaning was desired, a timely written request therefor should have been made.

*Judgment reversed. All the Justices concur.*