SMAHA, executor, *v.* GEORGE *et al.*

No. 14401.   FEBRUARY 11, 1943.

414

416

*Beck, Goodrich & Beck,* for plaintiff.

*West L. Cranford* and *Franklin & Eberhardt,* for defendants.

JENKINS, Justice. ■ An instrument, reciting a consideration of $10 and other good and valuable considerations, purporting to convey lands to the maker's nephews and nieces, with the usual habendum and warranty clauses and provisions of a deed, purporting to be signed by the maker by "his x mark," attested by two witnesses, one a notary public, delivered to one of the grantees at the time of its execution, and recorded during the life of the grantor, is a deed, and not a void will because improperly witnessed as such, where, after conveying the property to the grantees, their heirs and assigns, it provides: "The said grantor hereby expressly reserves in and for himself a life estate in and to the above-described property, with all rights and appurtenances thereof, and this conveyance is to be inoperative until the death of the grantor." In such a case, the question is one as to the "intention of the parties as gathered from the form and language of the instrument, considered in the light of all the circumstances and the contemporaneous acts of the parties." *Brice* v. *Sheffield,* 118 *Ga.* 128, 131 (44 S. E. 843). The manifest intent, as thus evidenced in the instant case, would not be rendered doubtful merely because, in expressly reserving to himself a life-estate in the property conveyed, the grantor may have added somewhat inappropriate language in connection with such reservation, to the effect that the conveyance "is to be inoperative until the death of said grantor." Such is the clear import of the rulings made by this court in the following cases. *West* v. *Wright,* 115 *Ga.* 277 (41 S. E. 602), and cit.; *Brice* v. *Sheffield,* supra; *Shelton* v. *Edenfield,* 148 *Ga.* 128,

130 (96 S. E. 3), and cit.; *Crawford* v. *Thomas,* 150 *Ga.* 435, 437 (104 S. E. 211); *Montgomery* v. *Reeves,* 167 *Ga.* 623, 625 (146 S. E. 311). Nor could the character and effect of such a deed be altered by the fact that, about one year later, the maker executed a will in the usual form, revoking "all other wills heretofore made by me," in which he attempted to give some of the property previously conveyed to other persons.

Under the preceding rules, the court properly granted a nonsuit on the petition by the executor of the subsequently executed will of the maker, seeking to cancel the previous instrument on the contention made in the second count that the instrument was a void will because there were only two witnesses.

(*a*) Nor did the court err in granting such nonsuit, under the amendment to the second count setting up that the instrument, if treated as a deed, was without consideration, was never delivered to any grantee, had been obtained by fraud, and that no revenue stamps were attached "by the grantor, in his presence or by his authority," since the evidence as to the first three questions was undisputed and in favor of the grantees; and since, as to the revenue stamps, the undisputed subsequent affixing of the stamps by one of the grantees was proper and did not constitute an illegal alteration of the instrument. 3 C. J. S. 960 (§ 44-b), and cit.

(*b*) The fact that the court overruled the defendants' demurrer to the second count of the petition as thus amended, setting up that the instrument, if construed as a deed, was never delivered, lacked consideration, was obtained by fraud, and had no revenue stamps attached when executed, did not and could not constitute res judicata, so as to establish as the law of the case that the executor was entitled to prevail on the other contention that the instrument was a will.

■ Under the evidence, as set forth in the statement of facts, it can not be said that a verdict was demanded for either of the contending parties; and the court did not err, on the general grounds, in refusing a new trial.

■ The Code, § 38-1806, provides: "When a witness shall be successfully contradicted as to a material matter, his credit as to other matters shall be for the jury, but if a witness shall swear wilfully and knowingly falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unim-

peached evidence. The credit to be given his testimony where impeached for general bad character or for contradictory statements out of court shall be for the jury to determine." Under this rule as to wilful and knowing falsity in a material matter, it has several times been held, that if a witness swears at the trial to a certain state of facts in a material matter, and he has previously sworn to the contrary in the same case, and where he admits that his testimony was false, this constitutes a wilful and knowing false swearing, and requires the jury to reject his testimony entirely, unless it be "corroborated by circumstances or other unimpeached evidence." In such a case it has been held that the judge should so charge the jury, even without a request. *Stafford* v. *State,* 55 *Ga.* 591 (4), 597; *Plummer* v. *State;* 111 *Ga.* 839 (36 S. E. 233); *Kelly* v. *State,* 145 *Ga.* 210 (1, 4), 211, 214 (88 S. E. 822); *Fishel* v. *Lockard,* 52 *Ga.* 632 (4), 636, and cit.; *McLean* v. *Clark,* 47 *Ga.* 24 (9); *Garland* v. *State,* 124 *Ga.* 832 (3), 835 (53 S. E. 314). But before this principle of such total rejection, with a duty of the court to charge the jury thereon, will have application, it must manifestly appear, not only that the witness on one or the other occasion has sworn falsely to a material matter, but that he has done so wilfully and knowingly. The rule does not extend to situations where it is shown to be reasonably possible that the discrepancy was occasioned by "mistake or the failure of memory." *Ivey* v. *State,* 23 *Ga.* 576, 581; *Skipper* v. *State,* 59 *Ga.* 63, 65. See *Robison* v. *State,* 114 *Ga.* 445 (40 S. E. 253). In construing the decision last cited, the Court of Appeals, in *Martin* v. *State,* 53 *Ga. App.* 213, 216 (185 S. E. 387), has gone so far as to hold: "It would thus seem that the Supreme Court has limited the ruling in [the *Stafford* and *Plummer* decisions] to cases where the witness admits that he 'wilfully and knowingly swore falsely;' and therefore this ruling would not apply in this case, where the witness denied that she swore wilfully and knowingly falsely, but said that if she swore to a contradictory state of facts, it was because she was confused and embarrassed and did not understand thoroughly the questions that were put to her." To like effect, see *Rumph* v. *State,* 24 *Ga. App.* 338 (1, *a*) (100 S. E. 768); *Spence* v. *State,* 52 *Ga. App.* 383 (2), 384 (183 S. E. 339). While we think it might be restricting the rule in the *Stafford* and *Plummer* cases too far to limit its application to cases where the

witness admits his guilt of perjury, so as to exclude its application where the nature and character of the testimony is such as would render the purpose to falsify plainly manifest, we feel assured that it was not reversible error in the instant case for the judge to omit, without request, to give in charge the provisions of the Code, § 38-1806, where the witnesses involved, while admitting a discrepancy in their previous testimony with respect to the incidental question whether or not the back or wrapper on the deed was there at the time the deed was executed, disclaimed any intent to testify falsely and sought to explain the discrepancy as due to a failure on their part to refresh their recollection as to such matter, which was not impressed on their minds, and due to the confusion caused by the circumstances of the cross-examination in their previous depositions.

(a) Exception is taken to the failure to charge the principle in the Code, § 38-1806, as to intentionally false testimony, not only under the rule just dealt with, but for the additional and different reason, that, the judge having charged the jury on the general subject of impeachment, and having failed to charge the particular rule in this section, the charge which he did give was incomplete and for that reason erroneous. In *Millen & Southwestern R. Co.* v. *Allen,* 130 *Ga.* 656 (5), 660 (61 S. E. 541), it was held by this court: "If the court undertakes to instruct the jury as to the methods by which a witness may be impeached, he should instruct them as to all the methods of impeachment, so far as such instructions are authorized by the evidence; but his failure to do so will not require the granting of a new trial, where no written request was made to charge the jury as to the mode of impeachment omitted by him from his instructions upon the subject of impeachment of witnesses." Accordingly, where the instructions given on the subject of impeachment are correct, they are not vitiated by a mere failure, without request, to charge the jury a particular or more detailed statement of a rule. See, in this connection, *Huff* v. *State,* 104 *Ga.* 521 (6), 524 (30 S. E. 808) ; *Hightower* v. *State,* 14 *Ga. App.* 246 (2), 249 (80 S. E. 684); *Sanders* v. *State,* 67 *Ga. App.* 706 (4), 709 (21 S. E. 2d, 276).

It is often true, as has been said by the Court of Appeals, that an incomplete statement may amount to an inaccurate statement. *Rumph* v. *State,* supra; *Harper* v. *State,* 17 *Ga. App.* 561 (2) (87

S. E. 808); *Williams* v. *State*, 25 *Ga. App.* 193 (102 S. E. 875); *Rouse* v. *State*, 2 *Ga. App.* 184 (7) (58 S. E, 416). As Judge Bleckley once said, where three are necessary, two equal nothing. But a mere failure to charge as to one method of impeachment does not in any wise invalidate a correct charge as to another and different method of impeachment. As to the omission by the charge, in the absence of a request, of any particular mode of impeachment, we regard as controlling the decisions which have been cited; and consequently the failure to give in charge Code § 38-1806, unless it had been required under the particular rule which has been discussed, did not vitiate the general charge on the subject of impeachment of witnesses.

■ It was not error to fail to charge, together with the instructions on impeachment, the particular rule that the testimony of a party is to be construed most strongly against him, and that he is not entitled to recover without "other evidence tending to establish his right to recover." Not only was there no request so to charge, but there were other witnesses, besides the defendant grantees, whose testimony supported their contentions. Accordingly, the principle as to the right of such a party to prevail, the omission of which is excepted to, would not have been a proper instruction. *Ray* v. *Green*, 113 *Ga.* 920 (2) (39 S. E. 470); *City of Thomasville* v. *Crowell*, 22 *Ga. App.* 383 (1, b) (96 S. E. 335); *Western & Atlantic R.* v. *Mathis*, 63 *Ga. App.* 172, 177 (10 S. E. 457), and cit.

(a) Under adjudications by this court and the Court of Appeals, no ground for reversal is shown by the use of the word *"absolutely"* in the instructions on impeachment, where, among other rules, the judge charged: "When a witness has been successfully impeached by any of the legal methods, that is, where his unworthiness of credit is *absolutely* established in the minds of the jury, he ought not to be believed, and it is the duty of the jury to disregard his entire testimony, unless it is corroborated, in which case you may believe the witness, it being, as a matter of course, always for the jury to determine whether or not a witness has or has not been in fact so impeached." *Elliot* v. *State*, 138 *Ga.* 23 (2), 25 (74 S. E. 691); *Hamilton* v. *State*, 143 *Ga.* 265 (4) (84 S. E. 583); *Landers* v. *State*, 149 *Ga.* 482 (100 S. E. 569); *Harrison* v. *State*, 20 *Ga. App.* 157 (3), 159 (92 S. E. 970); *McDaniel* v. *State*, 30 *Ga. App.* 365 (118 S. E. 61).

(*b*) In the instructions on impeachment the judge charged as follows: "A witness may be impeached by disproving the facts testified to by him, by proof of contradictory statements previously made by him of matters relevant to his testimony in the case, or by proof of general bad character. When thus impeached, or sought to be, *in either of the latter instances,* he may be sustained by proof of general good character, the effect of the evidence to be determined by the jury." The exception to this instruction is that under the italicized language, "the latter instances," the jury might have confused the instruction as meaning that a witness could be sustained by proof of good character, not only in the latter two instances mentioned by the court, but also in the instance previously mentioned, where the witness had been impeached by "disproving the facts testified to by him;" and that good character would not sustain a witness thus impeached. Without regard to the merits of this legal contention under the facts of the case (see *Surles* v. *State,* 148 *Ga.* 538 (6), 97 S. E. 538; *Bell* v. *State,* 100 *Ga.* 78, 27 S. E. 669; *Miller* v. *Western & Atlantic R. Co.,* 93 *Ga.* 480, 21 S. E. 52; *Mays* v. *Mays,* 153 *Ga.* 835 (4), 113 S. E. 154), the use of the words *"either of"* immediately preceding the words "the latter instances," obviously restricted the number of "instances" to two, and eliminated the third preceding instance. In no event, however, does it appear that the instruction as given could reasonably have been injurious to the plaintiff executor.

(*c*) "Where a judge undertakes to state to the jury the principles of the Code, § 38-107, as to how the preponderance of evidence should be determined, it is his duty to instruct the jury fully and completely with respect thereto, so far as relevant to the case on trial, and omission to do so is erroneous." *Renfroe* v. *Hamilton,* 193 *Ga.* 194 (2), 197 (17 S. E. 2d, 709), and cit.; *Tucker* v. *Talmadge,* 186 *Ga.* 798 (6), 800 (198 S. E. 726), and cit.; *Shankle* v. *Crowder,* 174 *Ga.* 399 (8), 416 (163 S. E. 180), and cit. Exception is taken to an excerpt from the charge as to the rules for determining from the testimony of the witnesses where the preponderance of evidence lies, on the ground that two of the elements in the Code, § 38-107, "the probability or improbability of their testimony," and "the nature of the facts to which they testified," were omitted; all the other elements, including that as to the jury considering "all the facts and circumstances of the

case," having been charged in the same excerpt. There is no merit in this ground, since it appears that the judge later in the charge repeated an enumeration of all the elements to be considered by the jury in weighing the testimony, and included in his enumeration the two elements as to which exception is taken.

■ In the oral examination of Solomon George, one of the grantees in the deed involved, he testified at the trial: "During the time [Habib George, the grantor] got ready to leave [Valdosta], he told me what he wanted me to do; he wanted me to fix a deed; he didn't want any one to have more than the others; all he wanted to do was to collect the rent and have the rent and live out of it until he died; he wanted the deed 'fixed that way, which I did." The executor objected to what the grantor had said, on the grounds that such a conversation was "hearsay," was "a communication with a dead man," and had "nothing to do with this case." The exception to the overruling of the objection is that "said testimony of Solomon George, who was a party defendant to the case, related to a conversation and transaction with Habib George, deceased, and was inadmissible in a case instituted by [his] personal representative." Whether or not the form of the objection, as made, to the admissibility of the testimony, rather than to the competency of the witness, was sufficient to raise the question sought to be raised by the exception (see *Crozier* v. *Goldman*, 153 *Ga.* 162, 163, 164, 111 S. E. 666), the exception shows no error requiring a reversal. At the trial, not only was oral testimony by other defendant grantees introduced with regard to the transaction in question with the deceased, and testimony by other witnesses similar in effect to that excepted to, but the plaintiff executor himself introduced his cross-examination of the same witness, previously taken by depositions. This previous testimony, introduced by the executor at the trial, included all the essential statements covered by the exception, and additional details as to what the deceased grantor had said to the witness with regard to preparing the deed; as to the whole transaction in question, and as to the business relations between the deceased and the witness. See *Waters* v. *Wells*, 155 *Ga.* 439 (4) (117 S. E. 322); *Harper* v. *Parks*, 63 *Ga.* 705; *Shipp* v. *Davis*, 78 *Ga.* 201 (2), 205 (2 S. E. 549); *Carlton* v. *Western & Atlantic R. Co.*, 81 *Ga.* 531 (7 S. E.

623); *Louisville & Nashville R. Co.* v. *Lovelace,* 26 *Ga. App.* 286 (3) (106 S. E. 6), and cit.

*Judgment affirmed. All the Justices concur, except Reid, C. J., absent because of illness.*