Wallace BUTTS, Plaintiff,

v.

CURTIS PUBLISHING COMPANY, Defendant.

Civ. A. No. 8311.

United States District Court
N. D. Georgia,
Atlanta Division.

Jan. 14, 1964.

Troutman, Sams, Schroder & Lockerman, Atlanta, Ga., for plaintiff.

Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for defendant.

MORGAN, District Judge.

The jury in this libel action returned a verdict for general damages against the defendant in the sum of $60,000.00 and for punitive damages in the sum of $3,000,000.00.

The defendant moves, under Rule 59 of the Federal Rules of Civil Procedure, 28 U.S.C.A., to set aside the verdict for damages principally upon the ground of excessiveness, as set out in Ground 1 of the defendant's motion. Apart from defendant's contention that the verdict is excessive, the defendant sets out 23 other grounds in its motion for a new trial (Ground 5 of defendant's motion having been abandoned).

The cause of action by plaintiff arose by virtue of an article published by defendant in its March 23, 1963, issue of the Saturday Evening Post, said article having been principally written by one Frank Graham, Jr., but with assistance from others employed by the defendant. The article was entitled "The Story of a College Football Fix", with the subtitle "How Wally Butts and Bear Bryant Rigged a Game Last Fall". The article concerned alleged information on Georgia plays given by Butts to Coach Bryant relating to the Alabama-Georgia football game played in Birmingham, Alabama, in September, 1962.

The article charged Butts with being corrupt and with betraying his players, and that the players were forced into the game like "rats in a maze" and "took a frightful physical beating". The article charged, in an italicized editorial, Butts, along with Coach Bryant, with being a participant in the greatest and most shocking sports scandal since that of the Chicago White Sox in the 1919 World Series. In the same editorial Butts was relegated to a status worse than that of "disreputable gamblers", and a corrupt person who, employed to "educate and guide young men", betrays or sells out his pupils.

Plaintiff Butts had been Head Football Coach at the University of Georgia from 1939 until 1961, at which time he became Athletic Director. As a member of his profession, he had been president of the Football Coaches Association, and by invitation had coached the College All-Stars, the Blue-Gray All Star Game, and the North-South All Star Game. Butts

has been a lecturer and speaker at clinics and banquets throughout the United States. Testimony adduced was that plaintiff had been offered employment by several college and professional football teams in the country and was negotiating with a Texas professional team when the article was published, but thereafter negotiations were discontinued.

Evidence was introduced that on March 18, 1963, Butts, through his attorney, notified the Curtis Publishing Company that the article was false and advised that the article not be published; and that thereafter, pursuant to Georgia law, Butts requested a retraction from Curtis, which was refused. It was admitted on the trial that one of Butts' daughters had telephoned long distance to a Saturday Evening Post official with a plea that the article be withheld from publication. The evidence of plaintiff showed that plaintiff was capable of earning a minimum of $12,000.00 per annum from his football activities, but that since the publication, all prior negotiations had been terminated.

■ The defendant filed its answer of justification and plead that the statements in the article were true. The defendant thus assumed the burden of proving the truth of the article. See Cox v. Strickland, 101 Ga. 482, 28 S.E. 655.

Curtis Publishing Company based its defense on certain notes taken by one George Burnett who made such notes to a telephone conversation alleged to have been overheard between Coach Bear Bryant, of the University of Alabama, and Butts, as Athletic Director of the University of Georgia, on a morning in September, a few days prior to the Alabama-Georgia game. By some mechanical defect, Burnett was connected by telephone to the conversation. These rough notes were kept by Burnett and revealed to Head Coach Johnny Griffith, of the University of Georgia, in late December, 1962, or early January, 1963. Curtis paid Burnett consideration for the story after the same was brought it its attention by Curtis' Birmingham, Alabama,

lawyers, who were defending Curtis in a libel suit brought by Coach Bryant because of another article in the Saturday Evening Post.

The evidence presented showed that Frank Graham, Jr., the author of the article, and Davis Thomas, Senior Editor of the Saturday Evening Post, knew that Burnett had been convicted of "bad check writing". No representative of the Post looked at the notes before the article was published. According to Coach Griffith of Georgia, defendant's witness, "a good number of Burnett's notes were incorrect and didn't even apply to anything Georgia had". No effort was made by the Post to view the actual game film, although the Sports Editor of the Post, one Roger Kahn, considered that necessary.

Inserted in the article were the following direct quotations, which were subsequently denied under oath by the parties quoted:

"(1) Graham wrote that Burnett had told him that Larry Rakestraw, Georgia quarterback, placed his feet in a certain position while on offense, thereby tipping off the defensive team as to whether the Georgia play would be a run or a pass. Burnett later testified under oath that he had not told Graham any such thing.

"(2) Mickey Babb, another Georgia football player, specifically denied the quotation in the article attributed to him pertaining to knowledge by the Alabama team of the Georgia formations and plays. Babb was quoted in the article as saying the Alabama players knew Georgia's key play (eighty-eight pop) and knew when Georgia would use it. Babb testified Georgia had no "eighty-eight pop" play. This was confirmed by Coach Johnny Griffith.

"(3) Sam Richwine, the Georgia trainer, specifically and categorically denied the quotation in the article attributed to him, which was also to the effect that Alabama knew Georgia's plays.

"(4) Coach Johnny Griffith categorically denied three separate and distinct quotations in the article that were attributed to him.

"(5) There were many other instances in which the individual, credited by Graham as giving Graham certain information which was included in the article, categorically denied under oath that any such information had been furnished."

Frank Graham, Jr., author of the article, and Charles Davis Thomas, the Managing Editor of the Saturday Evening Post, testified by deposition that they both knew that after the article was published plaintiff Butts' career would be ruined. The author of the article, Frank Graham, Jr., testified by deposition at the trial. Curtis' Editor-in-Chief, Clay Blair, Jr., and its Senior Editor, Davis Thomas, were present in court but testified by deposition. Furman Bisher, of Atlanta, who was paid to assist in the preparation of the article, testified by deposition.

■ The article was clearly defamatory and extremely so. The Saturday Evening Post had a circulation in excess of 6 million copies per issue. It claims readers of 22 million. Butts was unquestionably one of the leading figures in the national football picture. The jury was warranted in concluding from the foregoing incidents and the persistent and continuing attitude of the officers and agents of the defendant that there was a wanton or reckless indifference of plaintiff's rights. The guilt of the defendant was so clearly established by the evidence in the case so as to have left the jury no choice but to find the defendant liable.

■ This Court does not feel that the award of $60,000.00 for actual damages was excessive. The evidence showed plaintiff to be a man in his fifties, and that his earnings from his profession had been a minimum of $12,000.00 per annum.

The Court must now consider the amount of punitive damages awarded.

What is the nature of punitive damages and for what purpose do we allow their imposition? The law of Georgia provides that in every tort there may be aggravating circumstances, either in the act or the intention, and in that event the jury may give additional damages to deter the wrong-doers from repeating the trespass. Sec. 105–2002, Georgia Code Annotated, 1933.

This Court, however, is greatly concerned with the size of the verdict as to punitive damages. An examination has been made of many cases and the awards made throughout the several jurisdictions of the United States, both in the Federal and the State Courts. As far as this Court can ascertain, the largest award ever sustained for punitive damages by the Appellate Courts was an award of $175,000.00 in the case of Reynolds v. Pegler, D.C., 123 F.Supp. 36; 2 Cir., 223 F.2d 429. Since the award in the case at hand, the New York Supreme Court, Appellate Division, October Term, in the case of Faulk v. Aware, Inc., and Hartnett, 19 A.D.2d 464, 244 N.Y.S.2d 259, has reduced the award of punitive damages in the amount of $2,500,000.00 to $150,000.00. The award for punitive damages in the case under consideration is more than seventeen times larger than the highest award for punitive damages ever sustained. Reynolds v. Pegler, supra.

■ True, fixing the amount of damages is primarily in the province of the jury, and it has been said, with respect to libel cases, "the jury is generally considered to be the supreme arbiter on the question of damages". Lynch v. New York Times Company, 171 A.D. 399, 401, 157 N.Y.S. 392, 393. The Court, if possible, should try to avoid invading that field. However, a Court may not stand by idly when it is apparent that a verdict is excessive. In Sunray Oil Corporation v. Allbritton, 188 F.2d 751 (5 Cir. 1951), Judge Hutcheson emphasized that a district judge has a duty to grant a new trial, not only when the jury's verdict is excessive as a matter of law, but also

where "it is larger in amount than the judge thinks it justly ought to be". Thus, he said:

"Whether, in the opinion of the district judge, a verdict is excessive as a matter of fact, that is, though not contrary to right reason and, therefore not excessive as a matter of law, it is larger in amount than the judge thinks it justly ought to be, or is excessive as a matter of law, that is, is so monstrous or inordinate in amount as to find no support in right reason, he has the same power, the same duty, in the one case as in the other to relieve against the excessiveness by granting a new trial or requiring a remittitur in lieu".

As was held by the late Judge Parker in the case of Virginian Railway Company v. Armentrout, 4 Cir., 166 F.2d 400, 408, 4 A.L.R.2d 1064:

"The power and duty of the trial judge to set aside the verdict under such circumstances is well established, the exercise of the power being regarded as not in derogation of the right of trial by jury but one of the historic safeguards of that right.
* * *

"To the federal trial judge, the law gives ample power to see that justice is done in causes pending before him; and the responsibility attendant upon such power is his in full measure. While according due respect to the findings of the jury, he should not hesitate to set aside their verdict and grant a new trial in any case where the ends of justice so require."

■ In accordance with the cases cited above, this Court feels it is its duty to keep a verdict for punitive damages within reasonable bounds considering the purpose to be achieved as well as the corporate defendant's wanton or reckless indifference to the plaintiff's rights. In observance of such duty, this Court concludes that the award for punitive damages in this case was grossly excessive.

It is the Court's considered opinion that the maximum sum for punitive damages that should have been awarded against Curtis Publishing Company should be $400,000.00.

■ Movant's Grounds 2, 3, and 4 assert that the right given by Section 105–2002, Georgia Code Annotated, 1933, to a jury to grant punitive damages violates the rights guaranteed by the Federal Constitution to freedom of speech and press and to substantive and procedural due process. These contentions are without merit. However, these constitutional questions are raised for the first time by this motion. No constitutional question concerning the statute was ever raised by movant's pleadings. The contention that a State statute is unconstitutional is an affirmative defense and must be so pleaded in defendant's answer. Kewanee Oil & Gas Company v. Mosshamer, 10 Cir., 58 F.2d 711, 712; White Cleaners & Dyers v. Hughes, 7 F.Supp. 1017 (D.C.La. 1934, 3 judges).

Movant's Ground 5 has been expressly withdrawn by defendant.

■ Grounds 6 through 13 of defendant's motion contend that error was committed in excluding certain evidence as to specific acts of misconduct by plaintiff, defendant contending that this evidence should have been permitted for the purpose of impeachment and in mitigation of damages. The first consideration is Section 38–202, Georgia Code Annotated, 1933, which provides as follows:

"The general character of the parties, and especially their conduct in other transactions, are irrelevant matter, unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct."

The defendant contends that under Rule 43(a) of the Federal Rules of Civil Procedure, this evidence is admissible in Federal Court. Rule 43(a) provides that in determining admissibility of evidence where there is a conflict between the State and the Federal rule, the plaintiff

is entitled to the benefit of the more favorable rule. Hambrice v. F. W. Woolworth Company, 5 Cir., 290 F.2d 557.

However, on the question with which this Court is concerned and without passing upon the question as to whether the matter is substantive or procedural, it appears that there is no conflict between the Georgia rule and the Federal rule as to the admissibility of the specific acts of misconduct on the part of the plaintiff.

Under the decision of Cox v. Strickland, 101 Ga. 482, 28 S.E. 655, it is held that the filing of a plea of justification in defense to an action of libel puts the plaintiff's character in issue, and a defendant has a right to show that the plaintiff's general character is bad, but cannot, in so doing, go into the proof of specific acts or resort to general rumors by hearsay.

Neither under the majority of federal decisions which this Court has studied would such tests be admissible. See Tribune Association v. Follwell, 2 Cir., 107 F. 646; Sun Printing & Publishing Association v. Schenck, 2 Cir., 98 F. 925; Morning Journal Association v. Duke, 2 Cir., 128 F. 657.

As was said in the Schenck case, supra:

"It is not a defense to a libel or slander that the plaintiff has been guilty of offenses other than those imputed to him, or of offenses of a similar character; and such facts are not competent in mitigation of damages. The only tendence of such proof is to show, not that the plaintiff's reputation is bad, but that it ought to be bad."

As further authority sustaining the inadmissibility of such evidence, see Wigmore on Evidence, 3d Edition, Section 209, where it is stated that the reputed character of the plaintiff in an action of defamation is admissible in mitigation of damages so long as proof of character is made by reputation only; but particular acts of misconduct are irrelevant and such evidence is universally regarded as improper. Pertinent to this issue is the statement of Richards, C. B., in the case of Jones v. Stevens, 11 Price 235, 265:

"I cannot * * * allow defendants to impeach all the transactions of a man's life who may have occasion to seek redress in courts of justice and throw on him the difficulty of showing a uniform propriety of conduct during all his existence. It would be impossible for any man to come prepared to meet such a charge."

■ Movant contends that this Court erred in refusing to charge Section 38–1806 of the 1933 Georgia Code Annotated. There was no showing that any witness wilfully and knowingly testified falsely, and this Court charged generally on the subject of impeachment. See Smaha v. George, 195 Ga. 412, 24 S.E.2d 385.

Ground 15 of defendant's motion is without merit. Ground 16 of movant's motion is without merit. See Smaha v. George, supra; and Branan v. La Grange Truck Lines, Inc., 94 Ga.App. 829, 96 S.E.2d 364.

■ Grounds 17 and 18 of defendant's motion contend error in excluding evidence tending to impeach witness John Carmichael. Such evidence was offered by defendant to show that witness Carmichael had been convicted in 1933 while witness was a minor in Ohio. The Court, in its discretion, refused to admit such evidence because of the lapse of time. See Goddard v. United States, 5 Cir., 131 F.2d 220; Sinclair Refining Company v. Southern Coast Corporation, 5 Cir., 195 F.2d 626.

■ The alleged false statements for the purpose of obtaining licenses were inadmissible. A witness cannot be impeached by proving contradictory statements previously made by him as to matters not relevant to his testimony and to the case. Grant v. Hart, 197 Ga. 662, 30 S.E.2d 271; Haynes v. Phillips, 67 Ga. App. 574, 21 S.E.2d 261. Both Grounds 17 and 18 of the defendant's motion are without merit.

Grounds 19, 20, and 21 do not merit the granting of a motion for a new trial on any of the grounds as set forth.

■■■ Ground 22 of defendant's motion for a new trial asserts error because of arguments of plaintiff's counsel in the closing remarks to the jury. No objection nor complaint was ever raised to any portion of plaintiff's counsel's argument to the jury, although separate arguments were made by counsel for both parties on separate days of the trial. Arguments were begun on Friday by both counsel and completed on Monday. Much of the argument of which complaint is now made was offered on Friday, and yet on the following Monday, no objection was raised on this portion of counsel's summation. Counsel for defendant consisted of numerous counsel, and yet exception was only made on the filing of this motion. It is an elementary principle of federal law that a new trial will not be granted where a party seeks to raise for the first time, on a motion for a new trial, that opposing counsel was guilty of misconduct in his argument to the jury, where such conduct was not excepted to during the trial. See Travelers Insurance Company v. Bell, 5 Cir., 1951, 188 F.2d 725; Thomson v. Boles, 8 Cir., 123 F.2d 487; Hobart v. O'Brien, 1 Cir., 243 F.2d 735; Uhl v. Echols Transfer Company, 5 Cir. 1956, 238 F.2d 760. For the reasons stated above, Ground 22 of defendant's motion is without merit.

■■■ Ground 23(a) (b) (c) (d) and (e) of defendant's motion for a new trial complained of errors in the Court's instructions to the jury. The instructions complained of in these grounds of defendant's motion were not objected to at the trial of the case. Rule 51 of the Federal Rules of Civil Procedure provides in part as follows:

"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

Opportunity was afforded counsel for defendant to make such objections before the jury was permitted to consider its verdict. Under the above-cited rule, the defendant may not now complain. See also Pruett v. Marshall, 5 Cir. 1960, 283 F.2d 436; Williams v. National Surety Corporation, 5 Cir. 1958, 257 F.2d 771; Moore v. Louisville & Nashville Railroad Company, Inc., 5 Cir. 1955, 223 F.2d 214.

Defendant's contention based on Ground 24 of defendant's motion for a new trial is without merit for the reasons stated in this Court's ruling on defendant's motion for a judgment notwithstanding the verdict this day filed with the Clerk of the Court.

All of the grounds set out in defendant's motion for a new trial, excepting Ground 1, are denied for the reasons stated above.

■■■ As to the first ground of the defendant's motion for a new trial, a federal trial court has authority to determine whether a verdict is excessive and to grant either a new trial or to require a remittitur. State Farm Mutual Automobile Insurance Company v. Scott, 5 Cir. 1952, 198 F.2d 152.

An order in compliance with this opinion will be filed this date.

## ORDER

Now, this the 14th day of January, 1964,

It is ordered that the motion of the defendant, Curtis Publishing Company, for a new trial is granted unless the plaintiff, Wallace Butts, within twenty (20) days after the service of this order, shall, in a writing filed with the Clerk of the United States District Court for the Northern District of Georgia, remit all the punitive damages awarded above the sum of $400,000.00; the award for general damages in the amount of $60,-000.00 to remain undisturbed.